1 | Juanita Brooks, SBN 75934, brooks@fr.com
2 | Megan A. Chacon, SBN 304912, chacon@fr.com
| FISH & RICHARDSON P.C.
3 | 12390 El Camino Real
4 | San Diego, CA 92130
| Phone:  858-678-5070 / Fax: 858-678-5099
5 |
6 | Sheryl K. Garko, BBO 657735, *pro hac vice*, garko@fr.com
| Caroline K. Simons, BBO 680827, *pro hac vice*, simons@fr.com
7 | Grant T. Rice, BBO 693430, *pro hac vice*, rice@fr.com
8 | FISH & RICHARDSON P.C.
| One Marina Park Dr.
9 | Boston, MA 02210
10 | Phone:  617-542-5070 / Fax:  617-542-8906

11 | *Attorneys for Defendant Teknor Apex Company*

12 |

13 | UNITED STATES DISTRICT COURT

14 | SOUTHERN DISTRICT OF CALIFORNIA

15 |

YEISER RESEARCH & DEVELOPMENT LLC, a California limited liability company,

Plaintiff,

v.

TEKNOR APEX COMPANY, a Delaware corporation, and DOES 1 through 50, inclusive,

Defendants.

Case No. 3:17-CV-1290-BAS-RBB

**DEFENDANT TEKNOR APEX COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COUNTS 1-7 UNDER RULE 12(b)(6)**

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

Date:        August 7, 2017
Courtroom:  4B
Judge:       Hon. Cynthia Bashant

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ........................................................................................1

II.   FACTUAL BACKGROUND .......................................................................1

III.  LEGAL STANDARD ..................................................................................6

IV.   ARGUMENT ...............................................................................................6

   A.  Delaware Law Governs All of the Claims in This Action ...............6

      1.  Section 12(b) Is a Valid Choice-of-Law Clause ...........................7

      2.  Counts 2-7 Allege Torts Arising Out of the Same Nucleus of Facts as the Breach of Contract Claim ........................................8

   B.  Counts 3, 4, and 6 Should Be Dismissed Because They Are Preempted ..........9

      1.  Both DUTSA and CUTSA Preempt Parallel Tort Claims............9

      2.  Count 3 Is Preempted ...................................................................11

      3.  Count 4 Is Preempted ...................................................................11

      4.  Count 6 Is Preempted ...................................................................13

   C.  Count 4 Independently Fails to State a Claim as It Alleges Conversion of Intangible Property ..........................................................13

   D.  Count 5 Should be Dismissed as It Fails to Allege Interference with Prospective Economic Advantage ..........................................................14

   E.  Count 7 Should Be Dismissed Because Breach of the Implied Covenant of Good Faith and Fair Dealing Is Not Cognizable ...............15

   F.  Count 2 Should Be Dismissed Because It Fails to Plausibly Plead Trade Secret Misappropriation ..........................................................16

      1.  YRD Failed to Plead the Existence of a Trade Secret .................17

      2.  YRD Failed to Plead that Teknor Misappropriated Its Trade Secrets ..........19

   G.  Count 1 Should Be Dismissed Because It Fails to Plausibly Plead a Breach of Contract ..........................................................21

      1.  Section 4(g) of the CDA Is an Unenforceable Restraint of Trade...............21

      2.  YRD Fails to Plausibly Plead Other Breaches of the CDA .........24

V.    CONCLUSION ..........................................................................................25

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
  581 F. Supp. 2d 654 (D. Del. 2008) .................................................................. 17

*Agilent Techs., Inc. v. Kirkland*,
  No. CIV.A. 3512-VCS, 2009 WL 119865 (Del. Ch. Jan. 20, 2009) ............. 14, 15

*Akhtar v. Mesa*,
  698 F.3d 1202 (9th Cir. 2012) ........................................................................... 2

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
  No. 10CV974 DMS CAB, 2011 WL 1630809, at *6 (S.D. Cal. Apr.
  28, 2011) ........................................................................................................... 14

*Artec Grp., Inc. v. Klimov*,
  No. 15-CV-03449-EMC, 2016 WL 8223346 (N.D. Cal. Dec. 22, 2016) ........... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................... 24

*Asset Mktg. Sys., Inc. v. Gagnon*,
  542 F.3d 748 (9th Cir. 2008) ............................................................................ 22

*AssuredPartners Inc. v. Schmitt*,
  44 N.E.3d 463 (Ill. App. Ct. 2015) ................................................................... 22

*Atl. Med. Specialists, LLC v. Gastroenterology Assoc., P.A.*,
  No. CV N15C-06-245 CEB, 2017 WL 1842899 (Del. Super. Ct.
  Apr. 20, 2017)............................................................................................... 10, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................... 6, 24

*Clay v. Lankford*,
  No. 11CV1170-AJB RBB, 2012 WL 947805 (S.D. Cal. Mar. 20, 2012)............. 6

*Data Mgmt. Internationale, Inc. v. Saraga*,
  No. CIV.A. 05C-05-108, 2007 WL 2142848 (Del. Super. Ct. July 25, 2007) .... 12

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
  No. 04CV2562 JM(CAB), 2006 WL 4569360, at *4 (S.D. Cal. Feb.
  6, 2006)............................................................................................................. 14

*Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*,
    388 F. Supp. 2d 426 (D. Del. 2005) ..............................................................10, 11

*Ferdinando v. Intrexon Corp.*,
    2016 WL 6947060 (S.D. Cal. Nov. 28, 2016)......................................................16

*Flow Control, Inc. v. Herron Valve*,
    No. A-2573-02T5, 2004 WL 2563563 (N.J. Super. Ct. App. Div.
    Apr. 20, 2004)........................................................................................................22

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
    No. CV 9522-CB, 2015 WL 401371 (Del. Ch. Jan. 30, 2015) ......................15, 16

*Fundingsland v. Omh Healthedge Holdings, Inc.*,
    No. 15-CV-01053-BAS(WVG), 2016 WL 3022053 (S.D. Cal. May
    26, 2016) ...........................................................................................................8, 21

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
    No. 08 CV 1992 MM (POR), 2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) .......10

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) ..............................................................................7

*Heritage Homes of De La Warr, Inc. v. Alexander*,
    No. CIV.A. 1399-K, 2005 WL 2173992 (Del. Ch. Sept. 1, 2005),
    *aff'd*, 900 A.2d 100 (Del. 2006) ....................................................................16, 25

*Jardin v. Datallegro, Inc.*,
    No. 10-CV-2552-IEG WVG, 2011 WL 1375311 (S.D. Cal. Apr. 12, 2011) ......10

*Kan-Di-Ki, LLC v. Suer*,
    No. CV 7937-VCP, 2015 WL 4503210 (Del. Ch. July 22, 2015) ................21, 22

*Kavanagh v. Tuller*,
    No. 16-CV-01937-H (BGS), 2017 WL 1496436 (S.D. Cal. Apr. 26, 2017) ...6, 17

*Knowles-Zeswitz Music, Inc. v. Cara*,
    260 A.2d 171 (Del. Ch. Ct. 1969) .......................................................................22

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009) .................................................................8, 11, 12

*Lasership Inc. v. Watson*,
    79 Va. Cir. 205 (Va. Cir. Ct. 2009) ....................................................................22

*Leucadia, Inc. v. Applied Extrusion Tech., Inc.*,
   755 F. Supp. 635 (D. Del. 1991) ........................................................................ 13

*Libeau v. Fox*,
   880 A.2d 1049, 1058 (Del. Ch. 2005), judgment entered, (Del. Ch.
   July 9, 2005), *aff'd in pertinent part*, 892 A.2d 1068 (Del. 2006) ....................... 24

*Lipson v. Anesthesia Servs., P.A.*,
   790 A.2d 1261 (Del. Super. Ct. 2001) ............................................................... 14

*Medimatch, Inc. v. Lucent Techs. Inc.*,
   120 F.Supp.2d 842 (N.D. Cal. 2000) ................................................................... 8

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................................. 21

*Nedlloyd Lines B.V. v. Superior Court*,
   834 P.2d 1148 (Cal. 1992) ............................................................................... 7, 9

*Newell v. O.A. Newton & Son Co.*,
   104 F. Supp. 162 (D. Del. 1952) ....................................................................... 19

*Olinick v. BMG Entm't*,
   42 Cal. Rptr. 3d 268 (Cal. Ct. App. 2006) ........................................................... 7

*Osco Motors Co. v. Marine Acquisition Corp.*,
   C.A. No. 13-868-RGA/MPT, 2014 WL 2875374 (D. Mass. June 24, 2014) .. 9, 10

*Pellerin v. Honeywell Intern., Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ............................................................... 18

*Regents of the Univ. of California v. Aisen*,
   No. 15-CV-1766-BEN (BLM), 2016 WL 4097072 (S.D. Cal. Apr. 18, 2016) ... 12

*Resurgence Fin., LLC v. Chambers*,
   92 Cal. Rptr. 3d 844 (Cal. App. Dep't Super. Ct. 2009) ....................................... 8

*Richards Indus. Park, LP v. F.D.I.C.*,
   No. 11CV2059-LAB DHB, 2015 WL 3648806 (S.D. Cal. June 11, 2015) ......... 16

*Robert Half Int'l, Inc. v. Ainsworth*,
   68 F. Supp. 3d 1178 (S.D. Cal. 2014) ........................................................... 14, 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

*Savor, Inc. v. FMR Corp.*,
    No. CIV.A.00C-10-249-JRS, 2001 WL 541484 (Del. Super. Ct.
    Apr. 24, 2001), *aff'd*, 812 A.2d 894 (Del. 2002)................................13, 17, 18, 21

*Silvaco Data System v. Intel Corp.*,
    109 Cal. Rptr. 3d 27 (Cal. Ct. App. 2010) *as modified on denial of
    reh'g* (May 27, 2010) (disapproved of on other grounds by
    California Supreme Court) ...........................................................................10, 13

*UD Tech. Corp. v. Phenomenex, Inc.*,
    No. C A 05-842-GMS, 2007 WL 28295 (D. Del. Jan. 4, 2007) .............11, 12, 13

*UtiliSave LLC v. Miele*,
    C.A. No. 10729-VCP, 2015 WL 5458960 (Del. Ch. Ct. Sept. 17,
    2015) (unpublished)..................................................................................................22

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    No. CIV.A. 09-157-RGA, 2013 WL 867640 (D. Del. Mar. 8, 2013),
    *aff'd* (Jan. 21, 2015)........................................................................................20, 21

*In re Zukerkorn*,
    484 B.R. 182 (B.A.P. 9th Cir. 2012) ....................................................................8

**Statutes**

California Uniform Trade Secret Act ....................................................................*passim*

Del. Code Ann. tit. 6, § 2001 .............................................................................17, 19

Del. Code Ann. tit. 6, § 2007 .....................................................................................9

Del. Code Ann. tit. 6, § 2103 ...................................................................................21

Delaware Uniform Trade Secret Act ...................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(6).........................................................................6, 7, 8, 9

## I.    INTRODUCTION

Plaintiff Yeiser Research & Development LLC ("YRD") fails to state a claim as to each of the seven counts in its Complaint. Accordingly, the Court should dismiss the Complaint in its entirety.

YRD's allegations center around the purported misappropriation of its trade secrets, but the best that YRD pleads is that both it and Defendant Teknor Apex Company ("Teknor") make garden hoses. Accepting the pleadings as true, YRD fails to sufficiently or plausibly plead the existence, let alone its disclosure, of a cognizable trade secret. Nor does YRD sufficiently or plausibly plead Teknor's use of any of YRD's trade secrets in Teknor's subsequent development of the Zero-G Hose. Instead, YRD points to the product attributes of the Zero-G Hose (and all other successful garden hoses)—that the hose should be light, durable, reliable, economical, and kink-, abrasion-, and puncture-resistant—and hopes that this Court will allow it the opportunity to convert these well-regarded and well-known qualities into YRD's confidential, proprietary, and technical information comprising actionable and protectable trade secrets. Quite simply, YRD's threadbare allegations do not rise to the level of trade secret misappropriation under the law.

YRD also attempts to plead breach of contract based on an unenforceably broad and anticompetitive Confidential Disclosure Agreement (CDA), ostensibly seeking the Court's permission to claim non-confidential information as its own in order to stifle competition. YRD then adds a catalog of tort claims that are preempted by its own contract and/or trade secret claims. While YRD erroneously pleads its tort claims under California law, as opposed to the Delaware law that actually governs here, it is of no moment:  YRD's claims fail regardless, for the reasons set forth below. The Court should dismiss the Complaint in its entirety.

## II.   FACTUAL BACKGROUND

In late 2013, Teknor contacted YRD at the request of a common customer to discuss the possibility of entering into a joint venture for a new compact garden

hose. ECF No. 1-2, Exhibit A, pages 1-22 ("Compl.") ¶ 7.[1] Around this time, YRD allegedly shared with Teknor its views on the industry standard, its methods for building hoses, the strengths and weaknesses of existing hoses on the market, and "prior, current, and recommended future marketing methods to best build and market a collapsible compact hose." Compl. ¶ 8. Both parties already were aware of the durability issues of existing collapsible hoses. Compl. ¶ 8. YRD hoped to work with Teknor—a major hose manufacturer and distributor—to solve these problems and commercialize a hose that improved on YRD's existing flat hose. Compl. ¶¶ 7, 9, 18. In November 2013, YRD also disclosed to Teknor that it hoped to sell the improved hose through QVC and a limited number of retail stores. Compl. ¶ 10.

Two months later, on January 28 or 29, 2014, the parties entered into a Confidential Disclosure Agreement ("CDA"). Compl. ¶¶ 11 and Ex. A of Compl. Section 12(b) of the CDA contains a choice-of-law provision requiring the parties' agreement to be governed by and interpreted under the law of Delaware. Compl. Ex. A § 12b. Section 2 defines "Confidential Information" as "non-public business and/or technical information disclosed by a Party . . . which the disclosing Party considers to be confidential and proprietary." Compl. Ex. A § 2. Section 3 excepts from "Confidential Information" information that is:  (a) already in the public domain; (b) already in the receiving party's possession; (c) lawfully disclosed to the receiving party by a third party; or (d) developed independently. Compl. Ex. A § 3a-d. Section 4(g), however, contains a non-compete clause that prohibits a party from competing for 5 years using information that was not immediately and affirmatively declared, in writing, by the receiving party as non-confidential at the time of

---

[1] The factual background is based on the Complaint's allegations—which are outlined here as true only for purposes of this motion to dismiss—and the document attached to and relied upon by the Complaint:  the Confidential Disclosure Agreement (Ex. A). *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss, we consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.") (internal quotation omitted).

disclosure. Compl. Ex. A § 4(g). This non-compete obligation under § 4(g) purports to adhere *regardless* of the information's actual status under §§ 3(a), (b), and (c) at the time of disclosure, or even thereafter. Compl. ¶¶ 11, 12, Ex. A § 4(g).

After executing the CDA, YRD alleges it disclosed confidential information and trade secrets to Teknor, and that the new hose that Teknor separately developed and distributed almost 2 years later was the result of the misappropriation of YRD's trade secrets. But YRD's pleadings about the information it now claims as proprietary, confidential, or trade secrets are far from clear on any of those fronts:

***Hose Attributes:***  It is evident that YRD and Teknor discussed garden hoses. However, YRD's allegations about what the parties discussed are neither specific nor well-defined. YRD generally alleges that "YRD sent Teknor prototype images and details of product performance," "destructive testing results," "solutions to the hose nozzle problem," "test results for confidential sleeve concepts," "2015 designs," "heavy weave outer liners of various materials," "thicker PU," "a fireman nozzle design," and a vague reference to "other ideas." Compl. ¶¶ 13, 15, 22. But it is unclear which of this information was Confidential, or even which information belonged to which hose that the parties discussed—the existing collapsible hoses on the market, YRD's existing flat hose, Teknor's existing garden hose, or some yet-unknown compact hose they were exploring to co-develop. Compl. ¶¶ 7, 9, 10, 18.

YRD further allegedly disclosed "multiple variations" of a new hose design, including "outer casing material made from alternate materials," "more heavy duty material and weave," "a change in design," "a larger diameter," a "new, changed interior design." Compl. ¶¶ 17-19. YRD stresses that its "breakthrough" was a "confidential new interior design and the use of a heavy duty outer casing." Compl. ¶ 22. This design allegedly protected against puncture and from "the clamping aspects of the hose connector." Compl. ¶ 23. YRD also allegedly transmitted videos of "new prototypes and samples, which included the changed interior design of the hose, the durable outer liner," and "another design change." Compl. ¶ 17. Lastly,

3

YRD contends that it disclosed "the idea of using a small tube extending from the connector in between liners and on the outer liner to reduce fatigue caused by the connectors during clamping," though it did not specifically allege this as confidential.[2]  Compl. ¶ 23.

**_Production and Manufacturing_**:  YRD alleges that the parties confidentially discussed "expanding their business relationship" to cross-market a hose that Teknor would manufacture, on QVC and through Teknor's own retail channels; YRD also pleads that these discussions began *before* the CDA was executed, however. Compl. ¶¶ 10, 20. On March 17, 2014, Teknor allegedly solicited, and YRD supplied, "information on production scenarios with or without a winding reel, with and without the nozzle, hose shape, manufacturing cost and color options." Compl. ¶ 21. But again, YRD does not specify to which hose this information refers. *Id*.

**_Sales Information_**:  YRD generally alleges, without elaboration, that it disclosed its "commercialization evaluation," "detailed sales sheets" and "sales data" to Teknor; Teknor noted that "one minor aspect" was not subject to confidentiality, but it is unclear which one. Compl. ¶¶ 13, 15.

**_Marketing Ideas_**:  YRD's "marketing ideas" allegedly shared with Teknor included: "building a next generation flat hose," "use of protective sleeves at the connectors," "connector designs, "outer casing designs and materials," "a change in design" of the inner liner, "an improved wall thickness of the inner and outer liners,"

---

[2] Certain other YRD disclosures are also not alleged to be confidential. For example, YRD claims to have disclosed "a revolutionary approach to build a compact hose that avoided manufacturing defects of the flat hose, and allowed the new hose to work effectively at low water pressure while reducing kinking," a "new means" of hose manufacturing "that yielded a higher quality product which did not need a reel," and the "manufacturing and marketing advantages of these measures." Compl. ¶ 16. YRD does not allege that these were confidential, however. YRD also notes that, after disclosing information including "heavy weave outer liners," "thicker PU," and a "confidential technique for an inner liner," Teknor informed YRD of "one minor aspect" that was not confidential. Compl. ¶ 15. YRD never identifies what this "one minor aspect" of non-confidential information was.

4

and "the use of abrasion resistant outer casings." Compl. ¶¶ 13, 17. While Teknor was already a major manufacturer and distributor of rubber garden hoses when the parties met, and while YRD's own product was a *flat* hose, it was allegedly YRD who "explained" to Teknor that the concept of a *non-flat* hose that was kink-resistant, "economical, light, durable, and reliable" would be attractive to consumers and retailers, and that these ideal characteristics for a hose were "not known in the industry outside of YRD." Compl. ¶¶ 7, 18.

Discussions ceased; the parties never entered into a joint development agreement (JDA). Compl. ¶¶ 24-28, 87. Teknor thereafter developed and distributed its Zero-G Hose to retailers including Lowes, Walmart, and Target. Compl. ¶¶ 1, 27.

There are scant allegations that Teknor's Zero-G Hose embodies any of YRD's purported trade secrets. The only structural feature of the Zero-G Hose that YRD could identify—its "elastic inner layer and a slip coating layer having lubricating properties that increases the life of the hose assembly"—does not correspond to the purported trade secrets that YRD pleads. Compl. ¶¶ 1, 25, 27. Glaringly absent from YRD's allegations pertaining to the Zero-G Hose is the recitation of YRD's purportedly confidential disclosures, including the "small tube extending from the connector," the "heavy duty material and weave" made from "alternate materials," "thicker PU," "fireman nozzle design," "clamping," absence of a reel, or use of any of YRD's manufacturing techniques. YRD does not even plead that the Zero-G Hose uses YRD's so-called "confidential interior design."

YRD also alleges that the Zero-G Hose was marketed as being puncture-resistant, kink-resistant, and durable—ideal qualities for any successful garden hose. Compl. ¶ 27. Other allegations regarding the marketing of the Zero-G Hose, on the other hand, were never pled as YRD's disclosures to begin with. Compl. ¶ 27. For example, YRD alleges that Teknor's hose is marketed as "flexible" in cold weather, with a "pliable" inner core, durable woven fibers that can glide over plants, and having a flow rate comparable to a 5/8" hose. Compl. ¶ 27. But none of this was

5

1 alleged to have been discussed during the parties' exchanges under the CDA. None
2 of YRD's other "marketing ideas" are pled to be in Zero-G's marketing campaign,
3 either. *Compare* Compl. ¶¶ 17 with 27.

4    Over a year after the Zero-G Hose went to market, YRD accuses Teknor of
5 misappropriating its trade secrets—a claim that Teknor has denied and continues to
6 deny. Compl. ¶ 28. On May 23, 2017, YRD brought this action in the Superior
7 Court of California for the County of San Diego. On June 23, 2017, Teknor properly
8 removed this action to this Court. ECF No. 1. Teknor hereby moves to dismiss all
9 counts of the Complaint.

### III.  LEGAL STANDARD

11    Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to
12 state a claim upon which relief can be granted. *See Kavanagh v. Tuller*, No. 16-CV-
13 01937-H (BGS), 2017 WL 1496436, at *2 (S.D. Cal. Apr. 26, 2017). A complaint
14 must contain "enough facts to state a claim to relief that is plausible on its face."
15 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a district court must
16 accept as true all facts alleged in the complaint, and draw all reasonable inferences
17 in favor of the plaintiff . . . [t]he court need not, however, accept as true allegations
18 that are conclusory, legal conclusions, unwarranted deductions of fact or
19 unreasonable inferences." *Kavanagh*, 2017 WL 1496436, at *2; *Clay v. Lankford*,
20 No. 11CV1170-AJB RBB, 2012 WL 947805, at *2 (S.D. Cal. Mar. 20, 2012).

### IV.  ARGUMENT

####   A.    Delaware Law Governs All of the Claims in This Action

23    At the outset, Counts 2-7 should be dismissed on the ground that they are pled
24 under the wrong law. Instead of California law, all of the claims in this action, not
25 just Count 1, should have been pled under Delaware law. This is because the
26 contract underlying the breach of contract claim in Count 1 has an enforceable
27 choice-of-law clause selecting Delaware law. Compl. Ex. A § 12b. Under California

6

choice-of-law principles, which apply here,[3] this clause controls the applicable law governing all causes of action arising from or related to the CDA, including claims sounding in tort. *See Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1153-55 (Cal. 1992); *see also Olinick v. BMG Entm't*, 42 Cal. Rptr. 3d 268, 279 (Cal. Ct. App. 2006) (choice-of-law clause applies to claims "inextricably intertwined with the construction and enforcement" of the contract). "When two sophisticated, commercial entities agree to a choice-of-law clause . . .  the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract."  *Nedlloyd Lines B.V.*, 834 P.2d *at* 1156.  Because the choice-of-law provision in the CDA is valid, and because all of YRD's causes of action arise from or are related to the CDA, Delaware law governs all 7 counts.

### 1.    Section 12(b) Is a Valid Choice-of-Law Clause

The choice-of-law provision in the CDA selecting Delaware law is valid. To determine whether the choice of law clause is enforceable, courts evaluate: (1) whether the chosen state has a substantial relationship to the parties or transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. *Nedlloyd Lines B.V.*, 834 P.2d at 1152. If either is met, the court ensures that the chosen state's law is not contrary to a fundamental policy of California. *See id.* Absent such a conflict, the parties' choice of law is enforced. *See id.*

The test is met here. The "chosen state [Delaware] has a substantial relationship to the parties or their transaction" because Teknor is incorporated in Delaware. *See Nedlloyd*, 834 P.2d at 1153 (finding a party's state of incorporation dispositive of existence of substantial relationship). Moreover, Delaware law in this case is not contrary to the fundamental policy of California because applying

---

[3] *See, e.g.*, *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) ("In determining the enforceability of a choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state[.]").

Delaware law here would not be "so offensive to [California] public policy as to be prejudicial to . . . recognized standards of morality and to the general interest of the citizens." *See In re Zukerkorn*, 484 B.R. 182, 193 (B.A.P. 9th Cir. 2012) (internal quotations omitted).[4]  "The mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law." *Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F.Supp.2d 842, 862 (N.D. Cal. 2000). Accordingly, § 12(b) is enforceable.

### 2.   Counts 2-7 Allege Torts Arising Out of the Same Nucleus of Facts as the Breach of Contract Claim

YRD's claims in Counts 2-7—alleging misappropriation of trade secrets, conversion, interference with prospective economic advantage, unjust enrichment, unfair competition, and breach of the implied covenant of good faith and fair dealing—all relate to the common nucleus of facts centering on Teknor's alleged use of allegedly confidential information exchanged under the CDA. Courts consider tort claims to be related to a common nucleus of facts as a breach of contract claim if the same facts are used to establish all the elements of both claims. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009). Here, the centerpiece of YRD's Complaint is its alleged sharing of confidential information and trade secrets with Teknor under the CDA, the parties' failure to enter into a joint development agreement as supposedly contemplated by the CDA, Teknor's alleged misuse and misappropriation of YRD's information shared under the CDA to compete, and the resulting displacement of YRD's allegedly rightful place in the marketplace, in contravention of the CDA. Compl. ¶¶ 1, 10-88. All of the torts in

---

[4] California state and federal courts frequently apply Delaware law—an unsurprising occurrence given the popularity of Delaware as a state of incorporation. *See, e.g.*, *Resurgence Fin., LLC v. Chambers*, 92 Cal. Rptr. 3d 844, 848 (Cal. App. Dep't Super. Ct. 2009); *Fundingsland v. Omh Healthedge Holdings, Inc.*, No. 15-CV-01053-BAS(WVG), 2016 WL 3022053, at *4 (S.D. Cal. May 26, 2016).

Counts 2-7 are therefore based on the same nucleus of facts and CDA that form the basis for Count 1.

Accordingly, the CDA's choice-of-law clause in § 12(b)—designating Delaware law—governs all seven claims in the Complaint. *Nedlloyd,* 834 P.2d at 1153-55. YRD has wrongly pled its Counts 2-7 under California law, and those counts should be dismissed. Compl. ¶¶ 41-88. Regardless of whether Delaware or California law applies, however, Teknor's Motion succeeds.

### B.   Counts 3, 4, and 6 Should Be Dismissed Because They Are Preempted

Because YRD has attempted to plead misappropriation of trade secrets under Count 2, the Court should dismiss YRD's claims for unjust enrichment (Count 3), conversion (Count 4), and unfair competition (Count 6) for the reason that they are statutorily preempted, under both the Delaware Uniform Trade Secret Act (DUTSA) and the California Uniform Trade Secret Act (CUTSA). While Delaware law applies to this case, *see* Section IV.A, *supra*, both its and California's trade secret misappropriation statutes expressly preempt these torts where they are grounded in the same facts that support the trade secret claim. Moreover, both Counts 3 and 4 are independently displaced by the breach of contract claim under Count 1. Counts 3, 4, and 6 thus should be dismissed.

#### 1.   Both DUTSA and CUTSA Preempt Parallel Tort Claims

DUTSA and CUTSA preempt parallel tort claims. Section 2007 of DUTSA "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret," with limited exceptions that do not apply here. Del. Code Ann. tit. 6, § 2007. The Delaware Legislature intended Section 2007 to "'make uniform the law with respect to trade secrets,' and 'preserve a single tort cause of action under state law for misappropriation . . . and thus to eliminate other tort causes of action founded on allegations of trade secret misappropriation.'" *Osco Motors Co. v. Marine Acquisition Corp.*, C.A. No. 13-

868-RGA/MPT, 2014 WL 2875374, at *13 (D. Mass. June 24, 2014) (quoting *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 755 F. Supp. 635, 636-37 (D. Del. 1991)). DUTSA therefore preempts claims that are grounded in the same facts that purportedly support a misappropriation of trade secrets claim. *See id.,* 2014 WL 2875374, at *13. A determination of whether the information at issue constitutes a trade secret under DUTSA, however, need not be addressed before analyzing whether the claims must be displaced. *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc*., 388 F. Supp. 2d 426, 433 (D. Del. 2005). As discussed in detail below, Counts 3, 4 and 6 meet this standard and are preempted by DUTSA.

YRD fares no better under California law. California courts recognize that CUTSA displaces tort claims "based on the same nucleus of facts" as any trade secret claims that are or could be plead. *Silvaco Data System v. Intel Corp*., 109 Cal. Rptr. 3d 27, 48 (Cal. Ct. App. 2010) *as modified on denial of reh'g* (May 27, 2010) (disapproved of on other grounds by California Supreme Court).

Finally, YRD's attempt to carve out "highly valuable confidential information" that are *not* trade secrets from Counts 2-7 does not save them from preemption. *See* Compl. ¶¶ 52, 58, 67 ("YRD owned valuable confidential information that was transmitted to the Defendants under the CDA, the misappropriation of which is not actionable under [CUTSA]"). Courts generally hold that "non-trade secret information is not a protectable class of information and therefore common law claims that seek to protect it are preempted." *Atl. Med. Specialists, LLC v. Gastroenterology Assoc., P.A.*, No. CV N15C-06-245 CEB, 2017 WL 1842899, at *14 (Del. Super. Ct. Apr. 20, 2017). The law is the same under CUTSA. *See, e.g.*, *Jardin v. Datallegro, Inc.*, No. 10-CV-2552-IEG WVG, 2011 WL 1375311, at *3-4 (S.D. Cal. Apr. 12, 2011) ("CUTSA preempts all claims based upon the misappropriation of confidential information, whether or not that information rises to the level of a trade secret.") (internal quotations omitted); *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08 CV 1992 MM (POR), 2009 WL

1  3326631, at \*11-\*13 (S.D. Cal. Sept. 3, 2009) (same).

2  **2.    Count 3 Is Preempted**

3  YRD's claim for unjust enrichment under Count 3 is preempted by both its

4  breach of contract claim under Count 1 and its misappropriation claim under Count

5  2. First, YRD alleges a claim for unjust enrichment that arises from Teknor's

6  alleged wrongful enrichment "through highly valuable confidential information

7  transmitted to them by YRD under the CDA" and subsequent alleged

8  commercialization of products "using such information." Compl. ¶¶ 52-53. This

9  count merely re-alleges the breach of Teknor's purported duty to YRD under the

10  CDA and is thus displaced by Count 1. *See Kuroda*, 971 A.2d at 892 ("When the

11  complaint alleges an express, enforceable contract that controls the parties"

12  relationship ... a claim for unjust enrichment will be dismissed.") (internal

13  quotations omitted).

14  Second, by alleging unjust enrichment based on Teknor's alleged benefit from

15  using YRD's "highly valuable confidential information," YRD bases Count 3 on the

16  same nucleus of facts as the misappropriation of trade secrets claim under Count 2.

17  Compl. ¶ 52. Count 3 accordingly is preempted. *See UD Tech. Corp. v.*

18  *Phenomenex, Inc.*, No. C A 05-842-GMS, 2007 WL 28295, at \*8 (D. Del. Jan. 4,

19  2007) (holding unjust enrichment claim preempted based on "alleged use of and

20  benefit from" plaintiff's confidential information); *Ethypharm S.A. France*, 388 F.

21  Supp. 2d at 434 (finding unjust enrichment count preempted by DUTSA as it was

22  based on same facts as trade secret misappropriation claim). Count 3 is preempted

23  by CUTSA for the same reasons. *See, e.g., Artec Grp., Inc. v. Klimov*, No. 15-CV-

24  03449-EMC, 2016 WL 8223346, at \*6 (N.D. Cal. Dec. 22, 2016) (dismissing unjust

25  enrichment claim as it was "based on the same nucleus of facts as [the]

26  misappropriation of trade secrets claim"). Count 3 fails.

27  **3.    Count 4 Is Preempted**

28  Similarly, Count 4 alleging conversion should be dismissed as preempted by

1   the breach of contract claim under Count 1 as well as under DUTSA. YRD alleges

2   that "YRD owned valuable confidential information that was transmitted to

3   Defendants **under the CDA**," that Teknor allegedly "wrongfully used and exercised

4   dominion and control over" such information, that YRD "no longer has exclusive

5   use of such information," and that Teknor's alleged conduct "constitutes conversion

6   of identifiable intellectual property." Compl. ¶¶ 58-61 (emphasis added). But where

7   the plaintiff's claim for conversion arises from a breach of contract, it "generally

8   must sue in contract, and not in tort." *Data Mgmt. Internationale, Inc. v. Saraga*,

9   No. CIV.A. 05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007).

10  Here, YRD has expressly grounded its conversion claim in the transmittal of

11  information "under the CDA," and has failed to allege any "independent legal duty,

12  apart from the duty imposed by contract," that governs the parties' obligation

13  regarding the information exchanged between them. Compl. ¶ 58; *see also Kuroda*,

14  971 A.2d at 889 ("Because the complaint fails to identify the interference with a

15  right to the money independent of rights granted under the contract, the conversion

16  claim must be dismissed.")  Count 4 therefore fails to state a claim.

17        Count 4 also is preempted because a conversion claim arising from the same

18  set of facts as a claim for misappropriation of trade secrets is statutorily preempted

19  by DUTSA. *See UD Tech. Corp.,* 2007 WL 28295, at * 9 ("[T]he conversion claim

20  is clearly preempted" to the extent to which it is predicated only on the same facts

21  grounding the misappropriation of trade secret claim). Again, "DUTSA precludes

22  common law claims based on misappropriation of business information even in

23  cases in which the claim does not meet the statutory definition of 'trade secret'

24  under the Code." *Atl. Med. Specialists, LLC*, 2017 WL 1842899, at *15. Courts have

25  held that the same applies for CUTSA. *See, e.g.*, *Regents of the Univ. of California

26  v. Aisen*, No. 15-CV-1766-BEN (BLM), 2016 WL 4097072, at *8-*9 (S.D. Cal.

27  Apr. 18, 2016) ("[A] claim of conversion of even non-trade secret information (or

28  data) is still preempted by the trade secrets Act."). Count 4 should be dismissed.

#### 4.    Count 6 Is Preempted

YRD's claim for unfair competition under Count 6 also is predicated on the same set of facts stemming from its claim of misappropriation of trade secrets, and thus, is preempted. YRD alleges that "Defendants' conduct in misappropriating YRD's confidential information, under the guise of pretending to honor the CDA . . . constitutes unfair competition" and that it has thereby "gained an unfair competitive advantage over YRD." Compl. ¶¶ 74-75. YRD alleges no other facts supporting its claim for unfair competition. As such, YRD's claim for unfair competition is statutorily preempted by DUTSA and fails "as a matter of law." *Savor, Inc. v. FMR Corp.*, No. CIV.A.00C-10-249-JRS, 2001 WL 541484, at *4 (Del. Super. Ct. Apr. 24, 2001), *aff'd*, 812 A.2d 894 (Del. 2002) (dismissing unfair competition claim "grounded in the same facts which purportedly support the Misappropriation of Trade Secrets claim."); *see also Leucadia, Inc.*, 755 F. Supp. at 636-637 (dismissing plaintiff's unfair competition claim in light of DUTSA). Count 6 similarly fails as preempted by CUTSA. *See Silvaco Data System*, 109 Cal. Rptr. 3d at 54-55 (finding CUTSA bars unfair competition claims sounding in misappropriation of trade secrets). Count 6 should be dismissed.

Counts 3, 4, and 6 are all preempted and should be dismissed.

### C.    Count 4 Independently Fails to State a Claim as It Alleges Conversion of Intangible Property

YRD's claim for conversion under Count 4 independently fails because a conversion claim under Delaware law requires the plaintiff to identify tangible property that was allegedly converted. *See UD Tech. Corp.*, 2007 WL 28295, at *9. Property interests in intangible intellectual property are not actionable under the tort of conversion. *See id.* (dismissing conversion claim based on alleged property interest in confidential information, trade secrets, and patents.)  Thus, in addition to the reasons previously stated, Count 4 fails and should be dismissed.

13

### D.     Count 5 Should be Dismissed as It Fails to Allege Interference with Prospective Economic Advantage

YRD's claim for interference with prospective economic advantage under Count 5 should be dismissed as it fails to allege all required elements of the claim under either Delaware or California law.[5]   A claim of interference with prospective economic advantage requires YRD to establish: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with the opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of defendant's privilege to compete or protect his business interests in a fair and lawful manner." *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1285 (Del. Super. Ct. 2001); *see also Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10CV974 DMS CAB, 2011 WL 1630809, at *6 (S.D. Cal. Apr. 28, 2011). YRD fails on at least the first two prongs.

First, YRD grounds Count 5 solely on its general allegation that Teknor "usurped YRD's opportunity to roll out its own new compact hose products" and "grabbed market share for themselves." Compl. ¶ 68. However, "to plead a reasonable probability of a business opportunity, [a plaintiff] must identif[y] *a specific party* who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant." *Agilent Techs., Inc. v. Kirkland*, No. CIV.A. 3512-VCS, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009) (emphasis added) (internal quotation omitted); *see also Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04CV2562 JM(CAB), 2006 WL 4569360, at *4 (S.D. Cal. Feb. 6, 2006). A plaintiff "cannot rely on generalized allegations of harm." *Agilent Techs.*, 2009 WL 119865, at *7. And "[t]o be reasonably probable, a business opportunity must be something more than a mere hope or . . . a mere perception of a prospective business relationship." *Id.* YRD does not allege that it had developed a competing

---

[5] If California law applies, this claim is preempted under CUTSA. *See Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1192 (S.D. Cal. 2014) (dismissing claim of tortious interference with prospective economic advantage under CUTSA).

14

product that was ready to be sold and identifies no specific party or opportunity that Teknor interfered with. YRD's mere hope of "rolling out" its own, hypothetical compact hose is insufficient to make out a claim for interference. *See id.*

Second, YRD fails to sufficiently allege what conduct Teknor engaged in that could be characterized as intentionally interfering with YRD's business prospects. As YRD acknowledges, the big box retailers to which Teknor sells its Zero-G Hoses was Teknor's own customer network before the parties met.  Compl. ¶¶ 7, 20. YRD does not allege that Teknor interfered with its relationships with QVC or any "brick and mortar stores" with whom Teknor did not previously have a relationship. Compl. ¶ 10. Moreover, absent an actual product to sell, YRD cannot allege that its hypothetical product would even have competed with the Zero-G Hose. *See Agilent Techs.*, 2009 WL 119865, at *7. Because YRD failed to plead a specific opportunity and the conduct that interfered with it, Count 5 should be dismissed.

### E.    Count 7 Should Be Dismissed Because Breach of the Implied Covenant of Good Faith and Fair Dealing Is Not Cognizable

The Court should dismiss YRD's claim of a breach of the implied covenant of good faith and fair dealing under Count 7 because YRD failed to plead the existence of an implied obligation arising outside of the explicit terms of the CDA. "To state a claim for breach of the implied covenant, a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages." *Fortis Advisors LLC v. Dialog Semiconductor PLC*, No. CV 9522-CB, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015) (internal quotation omitted). "[T]he implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract." *Id*. (internal quotation omitted).

YRD alleges breach of the implied covenant of good faith and fair dealing because the parties failed to enter into a joint development agreement with YRD

pursuant to § 9 of the CDA. Compl. ¶ 20. But all § 9 contemplates is that a JDA, separate from the CDA, would cover "any future projects done together" by the parties. *See* Compl. Ex. A § 9. By the plain text, if the parties did not engage in "future projects done together," no JDA is required. Moreover, § 7(c) expressly disavows that the CDA establishes any unstated "partnership, joint venture, co-venture, or other association of business relationship between the Parties." Compl. Ex. A § 7c. To read § 9 as a concrete obligation to enter into a JDA—even if the parties chose not to work together—would "contradict . . . the purposes reflected in the express language" of § 7(c). *Fortis Advisors*, 2015 WL 401371, at *3 (internal quotation omitted).[6]  In effect, YRD improperly seeks to graft a JDA, complete with a royalty rate that had never been reduced to writing, into the CDA. Count 7 must fail. *Id*. ("[I]mplied good faith cannot be used to circumvent the parties' bargain" where the contract speaks directly to the issue); *see also Heritage Homes of De La Warr, Inc. v. Alexander*, No. CIV.A. 1399-K, 2005 WL 2173992, at *3 (Del. Ch. Sept. 1, 2005), *aff'd,* 900 A.2d 100 (Del. 2006) ("It is a well-settled principle of Delaware law that an agreement to agree in the future without any reasonably objective controlling standards is unenforceable.") (internal quotation omitted).

### F.   Count 2 Should Be Dismissed Because It Fails to Plausibly Plead Trade Secret Misappropriation

The Court should dismiss YRD's claim of trade secret misappropriation

---

[6] The implied covenant of good faith and fair dealing is similarly scrutinized under California law. *See, e.g.*, *Ferdinando v. Intrexon Corp.*, 2016 WL 6947060, at *4 (S.D. Cal. Nov. 28, 2016) ("The implied covenant . . . cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.") (internal quotations omitted); *see also Richards Indus. Park, LP v. F.D.I.C.*, No. 11CV2059-LAB DHB, 2015 WL 3648806, at *4 (S.D. Cal. June 11, 2015) ("[I]f allegations of a breach of such duty do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.") (internal quotations omitted).

because, among its other deficiencies, at the very least (1) it fails to plead the existence of a trade secret, and (2) it fails to plead that Teknor misappropriated any such trade secret in the development of its Zero-G Hose. For a DUTSA claim, a complaint must plead: (1) the existence of a trade secret; (2) that the trade secret was communicated by the plaintiff to the defendant; (3) that such communication occurred pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) that the trade secret was improperly used or disclosed by the defendant to the injury of the plaintiff. *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 662 (D. Del. 2008). Under CUTSA, a complaint must plead: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Kavanagh*, 2017 WL 1496436, at *3 (internal quotation omitted). YRD fails on at least two factors.

### 1.   YRD Failed to Plead the Existence of a Trade Secret

It is axiomatic that to plead a claim of trade secret misappropriation, a party must first plead the existence of a trade secret. *See Accenture Glob. Servs. GMBH*, 581 F. Supp. 2d at 662. A trade secret is information, including a formula, pattern, compilation, program, device, method, technique or process that (1) derives independent economic value from not being generally known and not being readily ascertainable by proper means, and (2) is subject to reasonable efforts to maintain its secrecy. *See* Del. Code Ann. tit. 6, § 2001. At this stage, the Court need go no further than the first element to conclude that YRD has not pled a viable claim for misappropriation of a trade secret.

First, YRD does not allege any facts to plausibly support the existence of a trade secret. It is not enough to claim an ideal end result as a trade secret:  YRD must plausibly allege that it possesses the information—the "formula . . . method, technique or process"—that can achieve that end result. *See Savor, Inc.*, 2001 WL 541484, at *3 (dismissing misappropriation claim because plaintiff only pled result

yielded by trade secret, rather than trade secret itself); *see also Pellerin v. Honeywell Intern., Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) ("If the subject matter of the claimed trade secret is a manufacturing process, the plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process[.]") (internal quotation omitted). YRD cannot do so. Instead, the majority of YRD's pleadings read like a laundry list of objectives for an ideal garden hose: that it is "puncture resistant," "kink resistant," has "a larger diameter," uses "more heavy duty material and weave," and "heavy weave outer liners of various materials," a "change in design," as well as a "new, changed interior design." Compl. ¶¶ 15, 17-19, 22, 43-44, 46. YRD does not allege even cursory facts that can plausibly establish YRD knew how to manufacture or otherwise achieve these various results. *See Savor*, 2001 WL 541484, at *3.

Second, YRD's complaint does not establish that its purported trade secret derived economic value "from not being generally known." At the outset, many of YRD's marketing ideas that it claims as trade secrets—that the parties should market the new hose as "economical, light, durable, and reliable"—are broadly known not only to hose manufacturers, but to the public at large, making its trade secret claim implausible. Compl. ¶¶ 18. Further, much of the information YRD pleads as disclosed is not pled as confidential. For example, YRD pleads that "YRD illustrated the previous industry standard" to Teknor, explained the benefits of a flat hose, and disclosed "a revolutionary approach to build a compact hose that avoided manufacturing defects of the flat hose." Compl. ¶ 16. YRD also pleads that it disclosed "new means to manufacture the hose that yielded a higher quality product which did not need a reel," and further disclosed their "manufacturing and marketing advantages." Compl. ¶ 16. But YRD does not claim that this information was confidential. YRD also concedes that, out of several categories of information that YRD disclosed to Teknor—"heavy weave outer liners," "thicker PU," and a "confidential technique for an inner liner"—Teknor informed YRD that "one minor

aspect" was *not* confidential. Compl. ¶ 15. However, YRD never identifies what this "one minor aspect" of non-confidential information was. Compl. ¶ 15. Moreover, YRD pleads that it disclosed information to Teknor ***prior*** to executing the CDA, such as its method for building hoses, recommended future marketing methods for a compact hose, its hope to sell an improved hose through QVC and retail stores. Compl. ¶¶ 7-8, 10, 20. Given that these disclosures occurred outside of a CDA, and YRD fails to allege that it was confidential, YRD cannot plausibly establish that these are adequately pled as trade secrets.

As for the information that YRD does facially allege as confidential, the allegations nevertheless do not plausibly plead a protectable trade secret because YRD's definition of "confidential" falls short of what DUTSA (and CUTSA) requires. YRD pleads that the information it disclosed was confidential because "Teknor received this information, acknowledged its ***novelty*** and agreed that it was confidential pursuant to paragraph 4(g) of the CDA." Compl. ¶ 17 (emphasis added); *see also* Compl. ¶¶ 13, 14, 15, 19, 21. But simply pleading that the information is "novel" to the recipient is not a substitute to pleading that the information was not "generally known" as required for trade secret protection. *See* Del. Code Ann. tit. 6, § 2001; *see also Newell v. O.A. Newton & Son Co.*, 104 F. Supp. 162, 165 (D. Del. 1952). And as explained in detail below, § 4(g) of the CDA expressly and improperly defines public and known information as "confidential." Compl. Ex. A § 4(g). YRD thus does not properly allege that the disclosed information derived value from not being generally known.

YRD failed to plausibly plead the existence of a trade secret. Count 2 should be dismissed on this basis alone.

## 2.   YRD Failed to Plead that Teknor Misappropriated Its Trade Secrets

Beyond failing to allege the existence of a trade secret, YRD fails to allege which of its trade secrets were misappropriated by Teknor's development and

Case No. 3:17-CV-1290-BAS-RBB

distribution of the Zero-G Hose. It is not enough to claim generally that the Zero-G Hose incorporated YRD's trade secrets because its advertising claims to solve the same problems identified by YRD. Compl. ¶ 27. Rather, YRD must affirmatively allege how the Zero-G Hose incorporated each of YRD's purported trade secrets. *See, e.g.*, *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. CIV.A. 09-157-RGA, 2013 WL 867640, at *3 (D. Del. Mar. 8, 2013), *aff'd* (Jan. 21, 2015) ("[A] trade secret consists of information, not ideas; a trade secret is actual, not theoretical; a trade secret is specific, not general."). YRD has not done so.

Without conceding that the following comprise trade secrets, YRD does not plead that the Zero-G Hose uses any of: "more heavy duty material and weave," YRD's "confidential new interior design and the use of a heavy duty outer casing," YRD's prototypes, test results, or designs, "thicker PU," "fireman nozzle design," "a larger diameter," or any innovations in clamping. *Compare* Compl. ¶¶ 15, 17-19, 22-23 with ¶ 25, 27. YRD does not even allege that the Zero-G Hose uses its "idea of using a small tube extending from the connector in between liners and on the outer liner to reduce fatigue caused by the connectors during clamping."[7]  Compl. ¶ 23. Along the same lines, YRD does not plead that Teknor used its sales sheets or sales data regarding YRD's own flat hose, improperly or otherwise, in distributing and selling the Zero-G Hose. Compl. ¶¶ 13, 15. As for marketing ideas, the Zero-G Hose promotional materials that YRD complains of "tout[]" either commonsense garden hose attributes that are generally known and widely used (*e.g.*, "puncture resistant," "reduces kinking," "resists bursting"), or were not ever alleged to be disclosed by YRD to Teknor (*e.g.*, "pliable inner core," "hybrid design," "flexible in cold weather," "flow of a 5/8 hose," "does not damage plants"). Compl. ¶ 27. And YRD does not even plead that Teknor used any of YRD's own processes, techniques, or other information to manufacture a hose with these ideas. *See*

---

[7] While this is by far the most detailed allegation of a method, technique, or process, YRD fails to specify that it was confidential or a trade secret. Compl. ¶ 23.

Case No. 3:17-CV-1290-BAS-RBB

1  *XpertUniverse*, 2013 WL 867640, at *3; *see also Savor*, 2001 WL 541484, at *3.

2       YRD thus fails to identify which, if any, of its purported trade secrets

3  described in the Complaint were encompassed in the development, distribution, or

4  marketing of the Zero-G Hose. *See, e.g.*, *MedioStream, Inc. v. Microsoft Corp.*, 869

5  F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) (dismissing complaint for failing to

6  identify trade secrets misappropriated by defendant). Count 2 should be dismissed.

### G.  Count 1 Should Be Dismissed Because It Fails to Plausibly Plead a Breach of Contract

9       Finally, Count 1 fails because YRD cannot plead that the CDA establishes an

10 enforceable contractual obligation: as written, the provisions that YRD is seeking to

11 enforce constitute an illegal restraint of trade under Delaware law. "To state a

12 breach of contract claim under Delaware law, a plaintiff must allege: (1) a

13 contractual obligation; (2) a breach of that obligation; and (3) resulting damages."

14 *Fundingsland,* 2016 WL 3022053, at *5, citing *Interim Healthcare, Inc. v. Spherion*

15 *Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005). Here, no contractual obligation

16 cognizable by this Court exists because, even accepting YRD's allegations as true,

17 § 4(g) on its face renders the CDA unenforceable by expressly preventing the parties

18 from competing in the marketplace while using information "learned" from the

19 disclosing party, even if it is already in the public domain. Compl. Ex. A § 4(g).

20 Count 1 should be dismissed.

### 1.  Section 4(g) of the CDA Is an Unenforceable Restraint of Trade

23      In Delaware, restraints of trade generally are unlawful. Del. Code Ann. tit. 6,

24 § 2103. Courts will permit a non-competition provision to stand, however, if "(1) it

25 meets general contract law requirements, (2) is reasonable in scope and duration, (3)

26 advances a legitimate economic interest of the party enforcing the covenant, and (4)

27 survives a balance of the equities." *Kan-Di-Ki, LLC v. Suer*, No. CV 7937-VCP,

28 2015 WL 4503210, at *19 (Del. Ch. July 22, 2015). Certainly, protecting proprietary

confidential information from misuse is a legitimate economic interest. *See id.* at *20. But it follows that blocking others from using public, non-proprietary, and non-confidential information *cannot* be a legitimate business interest. Courts regularly hold that confidentiality agreements that purport to protect non-confidential, non-proprietary information from others' use are unenforceable.[8]  *See, e.g.*, *AssuredPartners Inc. v. Schmitt*, 44 N.E.3d 463, 475 (Ill. App. Ct. 2015) (holding confidentiality provision unenforceable because it purported to protect information "without regard as to whether such information was in any way proprietary or confidential in nature"); *Lasership Inc. v. Watson*, 79 Va. Cir. 205 (Va. Cir. Ct. 2009) (dismissing breach of contract claim where confidentiality agreement protected "information that is not proprietary in nature or worthy of confidence" and thus was "not narrowly tailored to protect the legitimate business interests" of plaintiff); *Flow Control, Inc. v. Herron Valve*, No. A-2573-02T5, 2004 WL 2563563, at *3 (N.J. Super. Ct. App. Div. Apr. 20, 2004) ("Although an employer has a legitimate interest in protecting confidential information, an employee will not be precluded from using non-confidential information simply to prevent competition."); *cf. UtiliSave LLC v. Miele*, C.A. No. 10729-VCP, 2015 WL 5458960 (Del. Ch. Ct. Sept. 17, 2015) (unpublished) (denying motion to dismiss in part because confidentiality provision was reasonably tailored to carve out public information). To do so with the aim of restraining a competitor from competing in the marketplace would be doubly egregious. *See Knowles-Zeswitz Music, Inc. v. Cara*, 260 A.2d 171, 175 (Del. Ch. Ct. 1969) ("[A] restrictive covenant should be enforced only to the extent that it is reasonable to do so[.]").

---

[8] In California, such restraints on trade are rarely enforced. "Restraints are unlawful whether or not they are 'unreasonable' or 'overbroad.'" *Robert Half Int'l, Inc.*, 68 F. Supp. 3d at 1185 (quoting *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 292-93 (Cal. 2008)). "Under California law, non-competition agreements are unenforceable unless necessary to protect an employer's trade secret." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 758 (9th Cir. 2008) (citing Cal. Bus. & Prof. Code § 16600).

Section 4(g) is a non-competition clause that is neither reasonable in scope nor protects the legitimate business interests of YRD. It provides that each party "covenants not to use any Confidential Information of the other Party to compete with the other Party in any way, for five years from the date of disclosure." Compl. Ex. A § 4(g). However, the plain text states on its face that the non-compete obligation applies *even if* the so-called "Confidential Information" is "within the public domain through no breach of this Agreement," "was already in the receiving Party's possession at the time of disclosure," or was disclosed to the receiving Party "by a third party having a legal right to do so." Compl. Ex. A §§ 4(g), 3(a), 3(b), 3(c). If, at the time of disclosure, the party receiving the information fails to "immediately" notify the disclosing party that the information already "has been disclosed to them" via other channels, then the receiving party is bound by § 4(g) not to compete against the disclosing party for 5 years. *Id.* Section 4(g) demands this even if the information at issue is, in actuality, (1) public, (2) within the receiving party's own possession, or (3) disclosed to the receiving party by a third party— *whether before or after the disclosure*. *Id.*

Indeed, YRD boasts of how the non-compete provision in § 4(g) "anticipated" that §§ 3(a)-(c) "would not apply to information that was already in the public domain, was already in Teknor's possession, or was disclosed to Teknor by a third party." Compl. ¶ 12. This means that if YRD disclosed information to Teknor that was lawfully published mere weeks later, for example, the inability of Teknor to notify YRD at the time of disclosure that the information "has already been disclosed" would then restrain Teknor from competing against YRD—and everyone else in the industry—based on that publicly-known information, for 5 years. *Id.* This restraint of trade is patently unreasonable and goes well beyond YRD's legitimate business interest to protect its proprietary, confidential information.[9]

---

[9] Further, contracts under Delaware law are voidable when a "contract threatens a

### 2.   YRD Fails to Plausibly Plead Other Breaches of the CDA

Even if the unenforceability of § 4(g) does not confirm the absence of a valid contractual obligation between the parties, Count 1 still fails. Not only did YRD fail to support its claim of breach of other provisions of the CDA with factual pleadings (*see Twombly*, 550 U.S. at 570, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) it further placed all its eggs in the § 4(g) basket, relying entirely on its invalid operation to define "Confidential Information." All of Count 1 therefore must fall.

While YRD alleges in perfunctory fashion the breach of §§ 4(a), 4(b), 4(c), 4(d), 4(f), 4(g), and 9 of the CDA under Count 1, Compl. ¶ 37, the only conduct pled throughout the Complaint (purportedly) to breach the CDA is Teknor's use of information it failed to disavow under § 4(g) to "commercializ[e] products" and "compete[] with YRD products." Compl. ¶¶ 34, 35. YRD's complaint of the alleged breaches of §§ 4(a), 4(b), 4(c), 4(d), 4(f), and 9 of the CDA lack the support of any factual pleadings—plausible or not—and should be summarily dismissed. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

First, allegations of breaches of several provisions of the CDA—§§ 4(b), (c), (d), and (f)—are not even given cursory treatment in the Complaint. Nowhere in the Complaint does YRD allege that Teknor reverse-engineered samples in breach of § 4(c). Nor does YRD allege anywhere that Teknor filed a patent application using YRD's confidential information in breach of § 4(f). YRD does not allege that Teknor failed "to exercise the same degree of care as it employs for protection of its own proprietary information" in breach of § 4(d). Even YRD's general allegation regarding the disclosure of its information to third parties "including retailers Lowes, Walmart, Target and Home Depot" in breach of § 4(b) fails on its face to plead that the information disclosed was confidential. Compl. ¶ 36. Moreover, YRD's pleading of a breach of § 4(b) of the CDA is wholly unsupported by any

---

well-recognized policy interest of concern to our polity in general." *Libeau v. Fox*, 880 A.2d 1049, 1058 (Del. Ch. 2005), judgment entered, (Del. Ch. July 9, 2005), *aff'd in pertinent part*, 892 A.2d 1068 (Del. 2006).

1 | other factual pleadings in the Complaint.

2 |     The two remaining provisions in the analysis are §§ 4(a) and 9 of the CDA. As explained above, § 9 merely contemplates the possibility of a JDA, and is a non-enforceable agreement to agree under Delaware law. *See Heritage Homes of De La Warr, Inc.*, 2005 WL 2173992, at *3. YRD's pleading of a "breach" of § 9 fails to state a claim on its face. A claim of breach of § 4(a), on the other hand, which provides that the parties "agree only to use the Confidential Information" to "collaborate and share ideas pertaining to product development," falters for the same reason that § 4(g) is unenforceable. Compl. Ex. A, §§ 4(a), 1, 4(g). YRD does not plead that the information disclosed was Confidential Information under § 2 of the CDA. YRD instead only pleads that the information was confidential based on Teknor's failure to affirmatively claim the information as non-confidential under the unenforceable § 4(g). *See, e.g.*, Compl. ¶¶ 13-15, 17, 19, 21, 24, 32, 37. In fact, YRD uses this approach to support its entire Count 1. Compl. ¶ 21 ("At no time did Teknor dispute the confidential nature of the information imparted to it by YRD, which *conclusively establishes the information as indeed YRD's confidential information under the CDA*."). Its decision to do so renders § 4(a) and the rest of Count 1 just as unenforceable as § 4(g). *See* Section IV.G.1, *supra*. YRD fails to state a claim for breach of contract. Count 1 should be dismissed.

## V.   CONCLUSION

     For the above reasons, YRD's Complaint should be dismissed in its entirety.

Dated:  July 7, 2017

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Megan A. Chacon*
    Megan A. Chacon, SBN 304912,
    chacon@fr.com

Attorneys for Defendant TEKNOR APEX COMPANY

25

## **CERTIFICATE OF SERVICE**

1

2       The undersigned hereby certifies that a true and correct copy of the above and

3 foregoing document has been served on July 7, 2017 to all counsel of record who

4 are deemed to have consented to electronic service via the Court's CM/ECF system

5 per Civ LR 5.4(d). Any other counsel of record will be served by U.S. mail or hand

6 delivery.

7                      */s/ Megan A. Chacon*

8                      Megan A. Chacon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:17-CV-1290-BAS-RBB