Juanita Brooks, SBN 75934, brooks@fr.com
Megan A. Chacon, SBN 304912, chacon@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  858-678-5070 / Fax: 858-678-5099

Sheryl K. Garko, BBO 657735, *pro hac vice*, garko@fr.com
Caroline K. Simons, BBO 680827, *pro hac vice*, simons@fr.com
Grant T. Rice, BBO 693430, *pro hac vice*, rice@fr.com
FISH & RICHARDSON P.C.
One Marina Park Dr.
Boston, MA 02210
Phone:  617-542-5070 / Fax:  617-542-8906

*Attorneys for Defendant Teknor Apex Company*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YEISER RESEARCH & DEVELOPMENT LLC, a California limited liability company,<br><br>            Plaintiff,<br><br>      v.<br><br>TEKNOR APEX COMPANY, a Delaware corporation, and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. 3:17-CV-1290-BAS-RBB<br><br>**DEFENDANT TEKNOR APEX COMPANY'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COUNTS 1-7 UNDER RULE 12(b)(6)**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Date:         August 7, 2017<br>Courtroom:  4B<br>Judge:        Hon. Cynthia Bashant |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................1

II.   YRD ADMITS DELAWARE LAW APPLIES TO ALL CLAIMS.................1

III.  COUNT 3 IS PREEMPTED................................................................2

IV.  COUNT 4 IS BOTH PREEMPTED AND FAILS TO STATE A CLAIM .......3

V.   COUNT 5 IS INADEQUATELY PLED AND FAILS TO STATE
A CLAIM.....................................................................................5

VI.  COUNT 6 IS PREEMPTED................................................................5

VII. COUNT 7 FAILS BECAUSE AN IMPLIED COVENANT MAY NOT
OVERRIDE CONTRACTUAL LANGUAGE ...................................6

VIII. COUNT 2 FAILS BECAUSE YRD HAS NOT PLED ANY TRADE SECRET
OR MISAPPROPRIATION ...............................................................7

     A.    YRD Fails to Allege the Existence of Trade Secrets .................7

     B.    YRD Does Not Plead Misappropriation....................................9

IX.  COUNT 1 FAILS BECAUSE § 4(g) IS UNENFORCABLE AND IT FAILS
TO STATE A CLAIM ....................................................................10

X.   AMENDMENT OF YRD'S PLEADING WOULD BE FUTILE .................12

XI.  CONCLUSION.............................................................................12

# TABLE OF AUTHORITIES

**Cases**                                     **Page No.**

*1 Oak Private Equity Venture Cap. Ltd. v. Twitter, Inc.,*
  Case No. N14C-10-186 EMD CCLD, 2015 WL 7776758 (Del.
  Super. Ct. Nov. 20, 2015) ................................................................ 2, 6

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.,*
  581 F. Supp. 2d 654 (D. Del. 2008) ................................................ 7

*Agilent Techs. v. Kirkland,*
  No. CIV.A. 3512-VCS, 2009 WL 119865 (Del. Ch. Jan. 20, 2009) .................. 5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................. 7, 9, 10

*Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.,*
  No. CV N15C-06-245 CEB, 2017 WL 1842899 (Del. Super. Ct.
  Apr. 20, 2017) ...................................................... 3, 4, 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................ 7, 8, 9

*Data Mgmt. Internationale, Inc. v. Saraga,*
  No. CIV.A. 05C-05-108, 2007 WL 2142848 (Del. Super. Ct. July
  25, 2007) ............................................................. 4

*Digital Spectrum Solutions v. Eastman Kodak Co.,*
  Case NO. SACV 07-00729-JVS, 2008 WL 11340373 (C.D. Cal.
  Feb. 14, 2008) ....................................................... 12

*Echols v. Pellulo,*
  377 F.3d 272 (3d Cir. 2004) .......................................... 6

*Fortis Advisors LLC v. Dialog Semiconductor PLC,*
  No. CV 9522-CB, 2015 WL 401371 (Del. Ch. Jan. 30, 2015) ............ 6, 7

*Gillenardo v. Connor Broad. Delaware Co.,*
  No. C.A. 98C-06-015 WLW, 2002 WL 991110 (Del. Super. Ct.
  Apr. 30, 2002) ....................................................... 6

*Hydrogen Master Rights, Ltd. v. Weston,*
  228 F. Supp. 3d 320 (D. Del. 2017) .................................. 1

ii

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ............................................................................4

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009) ...........................................................................3

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
    755 F. Supp. 635 (D. Del. 1991) ......................................................................7

*Lipson v. Anesthesia Servs., P.A.*,
    790 A.2d 1261 (Del. Super. Ct. 2001) ............................................................5

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) ..........................................................................12

*Morlife, Inc. v. Perry*,
    66 Cal. Rptr. 2d 731 (Cal. Ct. App. 1997)......................................................9

*Peloza v. Capistrano Unified School Dist.*,
    37 F.3d 517 (9th Cir. 1994) ..............................................................................8

*Sanirab Corp. v. Sunroc Corp.*,
    No. CIV.A. OOC-02-191SCD, 2002 WL 1288732 (Del. Super. Ct.
    Apr. 29, 2002)....................................................................................................3

*SIGA Techs., Inc. v. PharmAthene, Inc.*,
    67 A.3d 330 (Del. 2013) ...................................................................................6

*Transocean Group Holdings Pty Ltd. v. South Dakota Soybean
    Processors, LLC*,
    663 F. Supp. 2d 731 (D. Minn. 2003)..........................................................2, 6

*UD Tech. Corp. v. Phenomenex, Inc.*,
    No. C A 05-842-GMS, 2007 WL 28295 (D. Del. 2007)......................................4

*UtiliSave, LLC v. Miele*,
    No. CV 10729-VCP, 2015 WL 5458960 (Del. Ch. Sept. 17, 2015)...................11

*Vogel v. Oceanside Unified School. Dist.*,
    No. 11CV2322-LAB JMA, 2014 WL 4101235 (S.D. Cal. Aug. 18,
    2014) ..................................................................................................................8

**Statutes**

Fed. R. Civ. P. 12(b)(6) .............................................................................................1, 3

Fed. R. Civ. P. 15(a) ................................................................................ 1

**Other Authorities**

18 U.S.C. §§ 1831-39 ........................................................................... 1

Del. Code Ann. tit. 6, § 2001(4) .......................................................... 8

iv

1

## I.    INTRODUCTION

YRD's brief in opposition to Teknor's Motion reveals the Complaint for what it is: an attempt by YRD to claim credit (and royalties) for Teknor's successful garden hose product that owes nothing—even by YRD's own pleadings—to anything that YRD claims it disclosed to Teknor. At base, YRD cannot shoehorn its allegations into the elements of viable claims under trade secret misappropriation, breach of contract, or tort law. YRD instead simply restates its pleadings in its brief, concedes it filed all but one of its claims under the wrong law,[1] and now improperly attempts to add a new count under the Defend Trade Secrets Act that was never pled in the first instance. The Complaint should be dismissed in its entirety.

## II.    YRD ADMITS DELAWARE LAW APPLIES TO ALL CLAIMS

YRD now concedes that Delaware law applies to all counts. Opp.[2] at 10:10-11:11. For the first time in its opposition, however, YRD argues that the Court should "also . . . consider[]" Count 2 (violation of the Uniform Trade Secrets Act) under the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831-39, "since the case has been removed" to federal court. Opp. 11:12-20. Not only is this wrong on the law—nothing precluded YRD from pleading a DTSA claim when the case was in state court—it is wholly inappropriate for YRD to use its opposition brief as the vehicle to amend its pleading and add a brand new cause of action. *Cf.* Fed. R. Civ. P. 15(a). And it is especially inappropriate here, where a claim under DTSA carries pleading and jurisdictional requirements of its own that are absent from the Complaint. *See, e.g.*, *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 337-38 (D. Del. 2017) (dismissing DTSA case for failure to allege interstate commerce nexus and post-enactment conduct). As YRD did not properly plead a

---

[1] As counsel for YRD admits, counsel for Teknor expressly informed him of Teknor's position during a meet and confer that YRD's tort claims should have been pled under Delaware, and not California, law.

[2] As cited herein, "Opp." refers to YRD's Opposition to Teknor's Motion to Dismiss Counts 1-7 Under Rule 12(b)(6) (ECF No. 19-1).

Case No. 3:17-CV-1290-BAS-RBB

1  DTSA claim, Teknor will not respond to the merits of such a claim at this time.

2  **III.   COUNT 3 IS PREEMPTED**

3       YRD is unable to explain why the unjust enrichment claim under Count 3 is

4  not preempted. YRD first argues that Count 3 is not preempted by the breach of

5  contract claim under Count 1 and that it should survive "in the alternative" because

6  "Teknor disputes that the JDA is sufficiently certain to be enforced." Opp. 16:5-8.

7  But this theory of "alternative" pleading presumes that Count 1 is based on the JDA,

8  and it is not; Count 1 is based on the CDA. Compl.[3] ¶¶ 29-40, ECF No. 1-2. The two

9  counts simply are not alternatives to each other. YRD's reliance on *1 Oak Private*

10 *Equity Venture Cap. Ltd. v. Twitter, Inc.*—which addressed actual alternative unjust

11 enrichment and contract claims based on the same contract—is thus inapposite. *See*

12 2015 WL 7776758, at *13-14 (Del. Super. Ct. Nov. 20, 2015).[4] YRD has not pled a

13 breach of the JDA, Compl. ¶¶ 29-40; indeed, it has pled that the JDA does not, and

14 need not, exist at all. Compl. ¶¶ 53-54; Opp. 3:15-16. YRD's theory thus fails.[5]

15      YRD then pivots to assert that Count 3 should not be preempted because the

16 parties dispute "whether the commitment to enter a JDA is binding." Opp. 16:11-13.

17 But this runs into YRD's own argument that this "commitment" arises out of § 9 of

18

19 [3]As cited herein "Compl." refers to YRD's Complaint attached as Exh. A to
20 Teknor's Notice of Removal (ECF No. 1-2.)

   [4] Further, the unjust enrichment and contract claims in *1 Oak* were allowed to
21 survive in the alternative because there was a dispute as to whether the contract at
22 issue—which was fully negotiated but only signed by one party—was even entered
   into. No analogous dispute as to the existence of the contract is present here.
23 Instead, the parties dispute whether the obligations under the CDA are enforceable
24 as a matter of public policy under Delaware law. Mot. 21:7-23:26.

   [5] YRD's reliance on *Transocean Group Holdings Pty Ltd. v. South Dakota Soybean*
25 *Processors, LLC* badly misses the mark: there, preemption was not at issue, and the
26 court considered unjust enrichment in the context of an express contractual promise
   to negotiate, where the underlying agreement was held otherwise unenforceable. 663
27 F.Supp.2d 731, 741, 744-45 (D. Minn. 2003). YRD does not—and cannot—plead
28 any such express contractual duty to negotiate here.

2

the CDA. Opp. 16:3-5. Because an unjust enrichment claim is "not available if there is a contract remedy," as YRD concedes is the "general principle" (Opp. 16:1-2), this brings us back to square one: Count 3 is preempted by Count 1. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 890-91 (Del. 2009); *see also* Mot.[6] 11:2-26. Finally, YRD offers no coherent response to the precedent cited in Teknor's Motion holding that DUTSA and CUTSA preempt parallel tort claims, including unjust enrichment, instead returning to a misplaced discussion of "contract rights" under the CDA; Teknor addresses this in more detail below. *Compare* Mot. 9:20-11:26 *with* Opp. 16:15-24.

## IV.   COUNT 4 IS BOTH PREEMPTED AND FAILS TO STATE A CLAIM

YRD similarly fails to seriously dispute that its Count 4 for conversion is preempted by DUTSA. Mot. 9:20-11:1, 12:17-28; *see also Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, 2017 WL 1842899, at *14 (Del. Super. Ct. Apr. 20, 2017) ("[N]on-trade secret information is not a protectable class of information and therefore common law claims that seek to protect it are preempted."); *see also Sanirab Corp. v. Sunroc Corp.*, 2002 WL 1288732, at *4 (Del. Super. Ct. Apr. 29, 2002) ("A claim for conversion does not apply when the Trade Secrets Chapter of the Delaware code can be invoked."). YRD's argument that *Atlantic Medical* "confirms" that a claim of conversion is not preempted because YRD is "vindicating" a contract right is wrong. Opp. 17:18-25. *Atlantic Medical* instead affirms the plain statutory text of Section 7 of DUTSA, which preempts common law torts based on the misappropriation of confidential information, but not contract claims. *See Atl. Med.*, 2017 WL 1842899, at *15. Conversion being a common law tort, *Atlantic Medical* as well as cases such as *Sanirab* squarely compel a finding that Count 4 is preempted by DUTSA.

Moreover, YRD's claim that Count 4 "vindicat[es] a right that emerges out of

---

[6] As cited herein, "Mot." refers to Teknor's Motion to Dismiss Counts 1-7 Under Rule 12(b)(6) (ECF Nos. 16, 16-1).

1  the CDA" (Opp. 17:18-25) is precisely Teknor's argument why Count 4 also is

2  preempted by the breach of contract claim under Count 1. Mot. 11:27-12:16. YRD's

3  attempt to argue that *Data Management* supports its position because it permitted a

4  claim of conversion alongside a contract claim misses the crux of the court's

5  holding: "[a] conversion claim may be asserted alongside a contract claim where the

6  plaintiff alleges the defendant breached a tort duty *independent* of any obligations

7  imposed by the contract." *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL

8  2142848, at *3 (Del. Super. Ct. July 25, 2007) (emphasis added). Here, where

9  YRD's own allegations plead that the tort duty is not independent—and indeed

10  "emerges out of"—the CDA, the conversion claim is preempted by Count 1. Compl.

11  ¶¶ 58-61; Opp. 17:18-25.

12        Count 4 independently fails because YRD fails to plead the transfer of

13  tangible property as required to make out a conversion claim. *See UD Tech. Corp. v.*

14  *Phenomenex, Inc.*, 2007 WL 28295, at *9 (D. Del. Jan. 4, 2007) (dismissing

15  conversion claim based on property interest trade secrets and patents). While YRD

16  attempts to point to the earlier-decided *Resource Ventures* for the proposition that

17  intellectual property can be considered tangible property if merged into a document

18  (Opp. 17:10-17), YRD stands in the same position as the unsuccessful plaintiff in

19  *UD Tech.*, whose "listing of the necessary elements of its conversion claim makes

20  no mention of tangible property." *Id.* at *9.[7] YRD's conversion claim similarly cites

21  only to intangible "confidential information," "intellectual property," and

22  "proprietary know-how." Compl. ¶¶ 58, 61.[8] Count 4 fails.

23

24  [7] YRD's citation to *Atlantic Medical* in its attempt to dismiss the holding of *UD Tech.* is misguided: *Atlantic Medical* did not address conversion nor its application

25  to intangible intellectual property. Opp. 18:28-19:5.

26  [8] Although YRD acknowledges that Delaware law applies to this case, it persists in citing *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003), which analyzes California

27  law. Regardless, *Kremen* does not aid YRD here because the court held that

28  intangible property can form the basis for a conversion claim only if it is "capable of exclusive possession or control." *Id*. at 1030 (analyzing web domain names).

4

## V.   COUNT 5 IS INADEQUATELY PLED AND FAILS TO STATE A CLAIM

YRD argues that *Agilent Techs. v. Kirkland* supports the viability of its claim for tortious interference with prospective economic advantage under Count 5 despite not specifically naming a lost customer. 2009 WL 119865 (Del. Ch. Jan. 20, 2009); Opp. 19:23-20:19. But the plaintiff in *Agilent* pled details sufficient to allow the court to infer that specific customers actually existed and were lost—including specific dates, and the fact that a particular customer had tested the plaintiff's products. *Agilent Techs*, 2009 WL 119865, at *7-*8. In contrast, Count 5's deficiency runs much deeper than merely failing to name specific names. Mot. 14:1-15:13. YRD failed to plead *any* details beyond that Teknor "seized the initiative for a substantial market share" and that YRD was "left to compete . . . while Defendants usurped the retailer sales channels and grabbed market share." Compl. ¶ 68; Opp. 19:23-20:1. These "vague statements" about unknown customers are precisely the ones "that courts usually reject." *Agilent*, 2009 WL 119865, at *7. They fall far short of establishing a "reasonable probability of a business opportunity" as required under Delaware law. *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1285 (Del. Super. Ct. 2001). Moreover, YRD simply did not respond to Teknor's argument that YRD did not allege facts as to how Teknor intentionally interfered with YRD's business opportunities. Mot. 15:4-13.

## VI.   COUNT 6 IS PREEMPTED

YRD again fails to address the central argument that DUTSA preempts its Count 6 claim of unfair competition based upon the misappropriation of confidential information. Instead, YRD returns to *Atlantic Medical* and rehashes its argument that Count 6 survives because it is a "tort claim in vindication of contract rights." Opp. 18:14-17. This again misstates *Atlantic Medical*, which simply held that contract claims are not preempted by the plain text of DUTSA. *Atl. Med.*, 2017 WL 1842899, at *15. And contrary to YRD's argument at Opp. 18:16-17, "non-trade secret information is not a protectable class of information and therefore common

5

law claims that seek to protect it are preempted" by DUTSA. *Id.* at \*14.

## VII.   COUNT 7 FAILS BECAUSE AN IMPLIED COVENANT MAY NOT OVERRIDE CONTRACTUAL LANGUAGE

YRD contends that the CDA created an implied obligation for Teknor to negotiate a JDA. Opp. 20:25-27. This argument contradicts the express language of §§ 7(c) and 9, which carves out the existence of a co-venture and conditions the entry of a JDA only on "future projects done together." Compl. Ex. A. It is black letter law that "the implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract." *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at \*3 (Del. Ch. Jan. 30, 2015) (internal quotation omitted).

The authority YRD relies on does not yield a different conclusion. *Echols v. Pellulo* is inapplicable here because it dealt not with breach of the implied covenant of good faith or fair dealing, but rather with breach of contract, and whether the contract's terms were definite enough to be enforceable. Opp. 21:26-22:7; *see* 377 F.3d 272, 278 (3d Cir. 2004). As with *Echols*, the issue in *Gillenardo* was based on express contractual obligations to negotiate in good faith, not an implied covenant. Opp. 22:18-21; *Gillenardo v. Connor Broad. Delaware Co.*, 2002 WL 991110, at \*6 (Del. Super. Ct. Apr. 30, 2002).[9] *1 Oak Private Equity Venture Capital Ltd. v. Twitter, Inc.* was analyzed under California law, not Delaware law, and the court there noted that Delaware approaches the implied covenant as a "cautious enterprise" and forecloses a claim for breach of the implied covenant if the parties

---

[9] *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330 (Del. 2013), and *Transocean Grp. Holdings*, 663 F. Supp. 2d at 731, are more of the same. Both decisions examined breaches of express contractual promises to negotiate. *See Transocean*, 663 F. Supp. 2d at 741; *SIGA*, 67 A.3d at 333. Nowhere in the Complaint does YRD plead a contractual obligation to negotiate a JDA—instead, the best YRD can plead is that Yeiser "indicated his expectation" of certain royalty rates and that Teknor "acknowledged that expectation" (Compl. ¶ 9). This falls well short of a valid offer and acceptance required to establish a contract.

Case No. 3:17-CV-1290-BAS-RBB

"would have . . . thought to negotiate about" the prohibited conduct. Opp. 22:8-18; *see* 2015 WL 7776758, at *12. Here, where §§ 7(c) and 9 both expressly contemplated the JDA *and* did not mandate the parties to negotiate one, Delaware courts would proscribe finding an implied covenant that would override the plain written language. *Id.*; *Fortis*, 2015 WL 401371, at *3. Count 7 fails to state a claim.

## VIII.  COUNT 2 FAILS BECAUSE YRD HAS NOT PLED ANY TRADE SECRET OR MISAPPROPRIATION

YRD's hypothetical questions here do not constitute argument and moreover do nothing to save the insufficiency of its pleadings. Opp. 23:16-18. The only relevant question before the Court is: has YRD adequately pled the existence—and misappropriation—of any trade secrets? The answer is "no."

### A.   YRD Fails to Allege the Existence of Trade Secrets

YRD attempts to shield itself from its obligation to set forth the existence of a trade secret in a well-pled complaint under the *Twombly* and *Iqbal* standards, claiming that it need only provide a "basic description" of its trade secrets. Opp. 23:20-24:4. But as Teknor establishes in its Motion, YRD's pleading has failed to meet even this alleged minimum requirement.

YRD misapprehends the case law upon which it relies. *Leucadia* is pre-*Twombly*/*Iqbal* and thus does not stand for the proposition that a claim trade secret misappropriation claim need not meet *Twombly*/*Iqbal*. *See generally Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635 (D. Del. 1991). Similarly, far from condoning the proposition that "the plaintiff need only provide a basic description of the trade secrets" to satisfy federal pleading standards (Opp. 23:20-24:4), the court in *Accenture* held that "nothing more than conclusions and a formulaic recitation of elements of a cause of action" is insufficient to support a claim for trade secret misappropriation even if a plaintiff "may have minimal facts available to it at the pleading stage." *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 662-663 (D. Del. 2008) (dismissing DUTSA claim) (internal quotation omitted).

1    YRD then creates a strawman and argues that "concepts" can be considered
2    trade secrets (Opp. 24:5-9), but Teknor has never argued otherwise. Rather, it is
3    Teknor's position that YRD has failed to sufficiently plead *anything*—concepts or
4    otherwise—that rise to the level of a trade secret. YRD would have this Court
5    believe that it is the first garden hose manufacturer to conceive of the concept of a
6    lighter, more durable, more reliable, more economical, and more kink-, abrasion-,
7    and puncture-resistant hose—as opposed to the "how" that perhaps would truly
8    constitute a trade secret:  the "formula, pattern, compilation, program, device,
9    method, technique or process" on exactly *how* to achieve these publicly-known
10   concepts. *See* Del. Code Ann. tit. 6, § 2001(4). To avoid revealing its empty hand,
11   YRD instructs this Court to "assume those details" of the trade secrets it has "pled
12   general [*sic*]" in the Complaint, citing *Peloza v. Capistrano Unified School Dist.*, 37
13   F.3d 517, 521 (9th Cir. 1994). Opp. at 24:17-19. This Court, however, has ruled that
14   *Peloza* is no longer good law post-*Twombly*. *See Vogel v. Oceanside Unified School.*
15   *Dist.*, 2014 WL 4101235, at *1 (S.D. Cal. Aug. 18, 2014) (granting motion to
16   dismiss and rejecting *Peloza* holding that court must assume general allegations
17   "embrace whatever specific facts might be necessary to support them").

18       Backed into a corner, YRD flippantly asserts "all of the information disclosed
19   to Teknor alleged in the complaint was confidential information (as confirmed by
20   Teknor itself at the time)." Opp. at 25:1-2. Not only is this inconsistent even with
21   YRD's own pleadings (*see* Mot. 18:18-19:8.),[10] the argument impermissibly
22   conflates "confidential information" with trade secrets. At base, YRD's Complaint
23   in conclusory fashion—and without supporting factual allegations[11]—claims that the

---

[10] YRD claims that the Complaint "identifies the key aspects of that information that Teknor misappropriated in commercializing its Zero G-Hose [*sic*] at Complaint ¶¶ 22-23." Opp. 25:2-5. This is inaccurate: Paragraphs 22 and 23 of the Complaint describe alleged *disclosures* by YRD, not alleged *misappropriation* by Teknor.

[11] Teknor's claim that "no matter how improbable the facts alleged are, they must be accepted as true" misstates the pleading standards under *Twombly/Iqbal*. *See Bell*

8

information disclosed was "not generally known to competitors or to the public and derived significant independent economic value through their disclosure or use by other who could obtain economic value from their disclosure or use." Compl. ¶ 43. This simply is not enough. *Iqbal*, 556 U.S. at 679-80 (noting that conclusory allegations are not entitled to the assumption of truth, and that claims "must be supported by factual allegations").

Finally, YRD argues here that the "confidential status" of the disclosures was "admitted" by Teknor under "protocol of the CDA ¶ 3", implying that this definitively establishes trade secret status. But this is not the law, and to the extent YRD was referring to § 4(g), as opposed to § 3 (which contains no so-called protocol), this assumes the enforceability of § 4(g), which Teknor has now shown to be an illegal restraint on trade. Mot. 21:21-23:26. *Morlife, Inc. v. Perry* is inapposite for this same reason, and moreover, the plaintiff in *Morlife* specifically included its customers' information within the definition of "confidential information" in its NDA. *Morlife*, 66 Cal. Rptr. 2d 731, 735-36 (Cal. Ct. App. 1997). YRD's pleadings can cite to no similar contractual language for support.

## B.    YRD Does Not Plead Misappropriation

YRD argues in response to Teknor's Motion—if its lone, 5-word sentence can be characterized as argument—that misappropriation is alleged at ¶¶ 27 and 46 of the Complaint. Opp. 25:20.[12] But ¶ 27 merely alleges that the Zero-G Hose's "promotional information touts attributes of the product" allegedly learned from YRD. Compl. ¶ 27. It thus cannot be construed as an allegation that the Zero-G

---

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (requiring a complaint to have "enough factual matter" to state a "plausible" claim for relief even if "*proof* of those facts is improbable") (emphasis added); *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009) (noting that conclusory allegations are not entitled to the assumption of truth).

[12] YRD almost entirely ignores Teknor's careful, claim-by-claim analysis of what YRD appears to allege as trade secrets and how YRD fails to plead that Teknor misappropriated any of them. Mot. 19:25-21:6.

9

Hose product itself incorporated trade secrets; it does not even constitute an allegation that Teknor stole YRD's *marketing* trade secrets. *See* Mot. 19:25-21:6. Paragraph 46 is conclusory and deserves no weight. *See Iqbal*, 556 U.S. at 679.

In an attempt to distract, YRD uses a kitchen-sink approach to respond to arguments that Teknor never made, including arguments about reverse-engineering and Teknor's use of YRD's alleged trade secrets as a "starting point." Opp. 25:23-26:12. Teknor's Motion is not based on these arguments, however. YRD also adds a non-sequitur about its business model through QVC. Opp. 26:5-12. But the Complaint does not allege that Teknor misappropriated YRD's business model the QVC channel, so it is unclear how YRD's argument resuscitates its threadbare allegations of trade secret misappropriation. Count 2 should be dismissed.

## IX.   COUNT 1 FAILS BECAUSE § 4(g) IS UNENFORCABLE AND IT FAILS TO STATE A CLAIM

Realizing that the non-compete provision in § 4(g) of the CDA goes well beyond the scope of protecting YRD's legitimate economic interests, YRD attempts to salvage Count 1 by brazenly recasting it as "confined to 'Confidential Information' which is defined at paragraph 2." Opp. at 27:14-20. This does not pass muster. As Teknor explained in its Motion, § 4(g) expressly prohibits the parties from competing based on non-confidential information if it so happens that the receiving party failed to given written notice to the disclosing party at the time of disclosure. Mot. at 2:17-3:3. Section 4(g) thus operates exactly in the way that even YRD acknowledges would be an unenforceable restraint of trade under Delaware law: "an unreasonable attempt to stifle competition through precluding use of freely-available information." Opp. at 27:20-22.

Unable to dispute the plain language of § 4(g), YRD offers three rejoinders, but each can be summarily dispatched. First, YRD argues that the Court may choose to "blue-pencil" the CDA to save its enforceability. Opp. at 26:24-27:13. But YRD omits mention that the language that would be severed out by such a "blue-pencil"

10

remedy would be the precise section on which YRD has based its entire Count for breach (and trade secret misappropriation). *See, e.g.*, Compl. at ¶¶ 13-15, 17, 19, 21, 24, 32, 37. Second, YRD argues that the enforceability of § 4(g) is "not an issue that should be resolved at the pleading stage." Opp. at 27:26-28:3. But unlike the agreement in *UtiliSave, LLC v. Miele,* 2015 WL 5458960, at *8 (Del. Ch. Sept. 17, 2015), § 4(g) does *not* carve out public information from its scope, and thus by YRD's own reasoning is overbroad and unreasonable on its face.[13] Opp. at 28:3 n. 7. The Court needs no more to find the CDA unenforceable. *See id.* ("The interpretation of the Confidentiality Provision is a question of law."). Third, YRD points to two California cases to argue that § 4(g) is enforceable as a restraint on trade under California law "while the parties are under contract to work with each other." Opp. 28:4-11. But YRD itself admits that Delaware law applies, not California (Opp. 10:11-17), and cannot cite to any Delaware cases in support of this argument. Moreover, YRD has not alleged an employer-employee relationship between the parties, and instead pled the opposite: that the parties were *not* working with each other. Compl. ¶¶ 24-28. YRD's arguments do not withstand scrutiny.

Finally, YRD fails to seriously engage any of Teknor's arguments regarding its failure to adequately plead facts to support breaches of §§ 4(a), (b), (c), (d), (f), and 9 of the CDA. Mot. 24:1-25:19. YRD puts up no argument at all with regard to §§ 4(d) or 9, and its failure to do so constitutes waiver. As for the other sections, YRD states now in conclusory fashion that Teknor "undoubtedly" breached §§ 4(b) and (c) when Teknor "pitched" its hose to retailers (Opp. 28:16-18), but pleads no facts nor bases to support its allegation that Teknor disclosed any confidential information to retailers. As explained above, YRD fails to explain away § 4(g), thus dooming any breach of § 4(a) as pled. Finally, YRD argues that § 4(f) was breached

---

[13] YRD even admits that the purpose of § 4(g) is to foreclose even *bona fide* challenges of confidentiality, as opposed to protect information that was truly confidential and proprietary to YRD. *See* Opp. at 27:27-28:2.

11

when Teknor's representative "published confidential information learned from YRD." Opp. 28:18-19; Compl. ¶ 25. But § 4(f) proscribes "fil[ing] a patent application" and nowhere in the Complaint does YRD plead that Teknor did so. Compl. Ex. A § 4(f). Count 1 must be dismissed.

## X.    AMENDMENT OF YRD'S PLEADING WOULD BE FUTILE

YRD's request to be given leave to amend its Complaint should be rejected because it would be futile. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (court may deny amendment on basis of futility of proposed amendment). No amount of repleading of any of YRD's Counts 3-6 would save the claims from preemption under DUTSA and Count 1, as they arise out of the same set of facts as YRD's claim for misappropriation of trade secret and/or are legally impermissible. *See, e.g., Digital Spectrum Solutions v. Eastman Kodak Co.*, 2008 WL 11340373 (C.D. Cal. Feb. 14, 2008) (denying for futility leave to amend claim that was "preempted by the UTSA"). Repleading of Count 1 would also be futile because the entire Complaint is based on § 4(g), an unenforceable non-compete provision. Finally, amendment of Count 7 would be futile because YRD cannot articulate an implied covenant that is not already governed by the express terms of the CDA. The Court should dismiss the Complaint without leave to amend.

## XI.    CONCLUSION

For all the foregoing reasons, the Court should grant Teknor's Motion to Dismiss Counts 1-7 of the Complaint and deny YRD's request to amend.

Dated:  July 31, 2017                   Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Megan A. Chacon*
    Megan A. Chacon, SBN 304912,
    chacon@fr.com

Attorney for Defendant TEKNOR APEX
COMPANY

12

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 31, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ LR 5.4(d). Any other counsel of record will be served by U.S. mail or hand delivery.

*/s/ Megan A. Chacon*

Megan A. Chacon