# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YEISER RESEARCH & DEVELOPMENT, LLC,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>TEKNOR APEX COMPANY,<br><br>　　　　　　Defendant. | Case No. 17-cv-1290-BAS-RBB<br><br>**ORDER GRANTING IN PART AND DENYING DEFENDANT'S SECOND MOTION TO DISMISS**<br><br>**[ECF No. 27]** |

This case concerns Defendant Teknor Apex Company's ("Teknor") alleged theft and misappropriation of confidential information and trade secrets from Plaintiff Yeiser Research & Development, LLC ("YRD") to design Teknor's Zero G Hose.[1] In resolving Teknor's first motion to dismiss the entire Complaint (ECF No. 16), the Court dismissed without prejudice YRD's trade secret misappropriation claim concerning a "business strategy" and "marketing ideas" and YRD's intentional interference with prospective economic advantage claim. (ECF No. 23 at 42.) The

---

[1] The Court has previously discussed in greater detail the factual allegations and procedural history of this case. (ECF No. 23 at 2–5.) The Court does not recount the case background in this order. To the extent there are new factual allegations relevant to the resolution of Teknor's present motion to dismiss, the Court discusses them in its analysis.

– 1 –

Court also granted YRD leave to add a federal trade secret misappropriation claim. Thereafter, YRD filed the First Amended Complaint ("FAC"). (ECF No. 26.)

Teknor has filed a second motion to dismiss (ECF No. 27)[2], which YRD opposes (ECF No. 29) and Teknor has replied in support (ECF No. 30). The scope of Teknor's motion is limited to two issues. First, Teknor seeks dismissal of YRD's amended claim for intentional interference with prospective economic advantage. (ECF No. 27 at 5–9.) Second, Teknor seeks dismissal of YRD's claims under the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 Del. C. § 2001 *et seq.*, and federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, insofar as these claims concern YRD's "business and marketing strategy." (ECF No. 27 at 10–11.) For the reasons herein, the Court (1) grants in part and denies in part Teknor's request to dismiss the amended intentional interference claim and (2) denies in full Teknor's request to dismiss the trade secret misappropriation claims based on YRD's "business and marketing strategy."

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). For the purposes of such a motion, the court accepts as true the allegations in the complaint and construes those allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). To survive a

---

[2] Teknor also filed a partial Answer to the claims in the FAC that the Court did not dismiss in its order on Teknor's first motion to dismiss. (ECF No. 26.) The partial Answer reserves a response to the claims Teknor has challenged in the present motion. (*See id.*)

– 2 –

Rule 12(b)(6) motion, a plaintiff is required to set forth "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct allege." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 556. The court need not accept as true legal conclusions pled in the guise of factual allegations. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754−55 (9th Cir. 1994). Relatedly, a pleading is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 676.

## DISCUSSION

### A. Intentional Interference with Prospective Economic Advantage

To state a claim for tortious interference with prospective economic advantage, Delaware law requires a plaintiff to allege: (1) a reasonable probability of a business opportunity, (2) intentional interference with that opportunity, (3) proximate causation, and (4) damages. *See eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, No. 7471-VCP, 2013 WL 5621678, at *40 (Del. Ch. Oct. 4, 2013). All these elements "must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del.Ch. 1980).

The Court previously dismissed YRD's claim for intentional interference without prejudice for failure to satisfy the first element. (ECF No. 23 at 37–38.) Although the Complaint identified retailers such as Lowes and Home Depot, YRD failed to allege facts showing a reasonable probability of a business opportunity, as opposed to a "mere hope" or "mere perception" of one. (*Id.* at 38.) The Complaint otherwise contained undifferentiated references to "retailer sales channels" and "market share." (*Id.*) Without the plausible identification of a business opportunity, the Court could not consider whether YRD had sufficiently alleged intentional

– 3 –

interference. (*Id.*)

Drawing on the reasoning of the Court's previous dismissal, Teknor argues that the FAC repeats the Complaint's pleading deficiencies by failing to provide any facts showing a reasonable probability of a business opportunity or intentional interference. (ECF No. 27-1 at 5–9.) The Court does not agree.

### 1. Reasonable Probability of a Business Opportunity

Delaware courts permit "a broad range of legitimate business expectancies, including the 'prospect of . . . [any] relations leading to potentially profitable contracts,' but the 'mere perception' or 'mere hope' of a prospective relationship or contract will not suffice." *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, C.A. No. N15C-03-241 WCC, 2015 WL 6772638, at *7 (Del. Super. Ct. Nov. 2, 2015). The factual allegations must establish some basis for "a bona fide expectancy," identifying a party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant. *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009).

Contrary to Teknor's argument, the FAC's allegations identify a reasonable probability of a business opportunity. YRD now identifies Costco as a prospective retailer who rejected "YRD's compact hose in favor of the Zero G Hose." (FAC ¶ 34, 93.) YRD explains that "[r]etailers typically allocate space to, at most, two products of similar attributes." (*Id.* ¶ 93.) "On July 21, 2017, John Yeiser met with the Costco Merchandise Team to review a hose that YRD was proposing to Costco." (*Id.* ¶ 34.) During the meeting, the "Costco team indicated . . . that although the YRD hose had tested very successfully and as well as the Zero G Hose" "Costco was choosing the Zero G hose instead of the YRD hose to roll out in 2018." (*Id.*) These allegations show a reasonable probability that Costco would have chosen to "roll out" YRD's compact hose for 2018 instead of the Zero G Hose if Teknor had not already marketed its hose to Costco. *See Agilent Techs., Inc.*, 2009 WL 119865, at *7 (a potential customer had tested a product "for use in its products, suggesting that the

– 4 –

customer had a serious interest in the product"); *see also Triton Constr. Co. v. Eastern Shore Elec. Servs.*, No. 3290-VCP, 2009 WL 1387115, at *19 (Del. Ch. May 18, 2009) (plaintiff had reasonable probability of prospective business opportunity for two projects on which it "bid . . . on a price only slightly higher" than the winning bids made by defendant employer of former employee alleged to have taken confidential information). Accordingly, YRD has satisfied the first element to state an intentional interference claim with respect to Costco.

### 2. Intentional Interference

An intentional interference claim also requires the plaintiff to plead intentional conduct by the defendant which interfered with the prospective business opportunity. *eCommerce Indus., Inc.*, 2013 WL 5621678, at *40. Delaware follows the Restatement of Torts, which provides that "'[i]ntentional interference' includes circumstances in which the actor 'knows that the interference is certain or substantially certain to occur as a result of his action.'" *Grunstein v. Silva*, No. 3932-VCN, 2009 WL 4698541, at *16 (Del. Ch. Dec. 8, 2009) (quoting Restatement (Second) of Torts § 766, cmt. j)). "[A]n action 'that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action' is sufficient to meet the intent requirement of tortious interference." *Id.* Even intentional conduct that affects a prospective business opportunity will not itself suffice to show actionable interference unless the alleged interference is "without justification" or is "improper." *Agilent Techs., Inc.*, 2009 WL 119865, at *7; *see also World Energy Ventures, LLC*, 2015 WL 6772638, at *6. Relying on *Grunstein*, Teknor argues that to show intentional interference with the Costco opportunity, YRD must specifically plead "Teknor's knowledge of YRD's meeting with Costco." (ECF No. 27-1 at 9, ECF No. 29 at 3 n.2.)

Although an allegation of Teknor's specific knowledge of the Costco opportunity would certainly show a type of intentional interference, the Court does not take such a limited view of how YRD may show intentional interference. This

– 5 –

case concerns Teknor's alleged intentional taking of YRD's confidential information, including hose designs and concepts, to develop the Zero G Hose in violation of its confidentiality agreement with YRD as well as state and federal trade secret laws—all of which harmed "YRD's opportunity to roll out its own new compact hose products[.]" (FAC ¶¶ 30 50–84, 92.) YRD alleges that it was Teknor which initially approached YRD specifically because of "YRD's past experience and knowledge of the product." (FAC ¶¶ 2, 6.) When coupled with the allegation that Costco expressly chose Teknor's Zero G Hose over YRD's, the Court finds these allegations suffice to show intentional interference at this stage. *See Beard Research, Inc. v. Kates*, 8 A.3d 573, 610 (Del. Ch. 2010) (defendants' misappropriation of proprietary and trade secrets and use of that information to take business away showed tortious interference); *see also Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 631 F. Supp. 2d 504, 509 (D. Del. 2009) (denying motion to dismiss claim when defendant allegedly acquired knowledge of plaintiffs' management solution program and used that information to underbid plaintiffs and caused plaintiffs not to win contract). Accordingly, the Court denies in part Teknor's motion to dismiss the amended intentional interference claim insofar as it concerns Costco.

Although the FAC states an intentional interference claim with respect to Costco, the FAC alleges relations with other retailers which the Court concludes are insufficient to state a claim. As part of its amended claim, YRD alleges that its "hose sits in shelf space directly competing against the Zero G Hose at multiple retailers including Walmart, Orchard Supply, Target and Ace Hardware." (FAC ¶ 93.) Teknor asserts that "YRD appears to effectively plead the opposite of a tortious interference claim" for these retailers because YRD's relations with these retailers admittedly remain intact. (ECF No. 27-1 at 7.) The Court agrees. Unlike the allegations that Costco expressly rejected YRD's compact hose in favor of the Zero G Hose, YRD's allegations show that it maintains relations with the named retailers despite the Zero G Hose. Although YRD may face competition from Teknor's hose at these retailers,

– 6 –

YRD does not identify any authority showing that it may premise an intentional interference claim on mere competition. Accordingly, the Court grants in part Teknor's motion to dismiss the amended intentional interference claim as to these retailers without leave to amend.

### B. Alleged Misappropriation of "Business and Marketing Strategy" Trade Secret

The Complaint alleged a trade secret misappropriation claim only under the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 Del. C. § 2001 *et seq*., which the Court dismissed without prejudice insofar as it concerned alleged marketing, sales information, and business strategy. (ECF No. 23 at 22–25, 42.) The Complaint alleged that Teknor had stolen its "business strategy," which consisted of selling hose products through QVC online followed by sales through brick and mortar retailers. (Compl. ¶¶ 42–43.) The Court determined that this alleged strategy did not qualify as a trade secret because "it appears that a zealous competitor could easily ascertain or reverse engineer [it] through public information[.]" (ECF No. 23 at 23.) The Court also deemed insufficient alleged misappropriation of YRD's "marketing ideas" because "the Complaint reference[d] only the attributes of YRD's compact hose concept and not any marketing ideas." (ECF No. 23 at 24.) Notwithstanding dismissal of YRD's DUTSA claim insofar it concerned these alleged trade secrets, the Court found that YRD stated a claim for alleged misappropriation of its new compact garden hose designs and concepts. (*Id*.)

The FAC now alleges trade secret misappropriation claims under both DUTSA and the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*. Both claims are premised in part on Teknor's alleged misappropriation of YRD's "business and marketing strategy." (FAC ¶¶ 64, 75.) Teknor challenges the sufficiency of the claims to the extent they are premised on this strategy.

A trade secrets misappropriation plaintiff must plead the following to state a DUTSA claim: (1) the existence of a trade secret; (2) that the trade secret was

communicated by the plaintiff to the defendant; (3) that such communication occurred pursuant to an express or implied understanding that the secrecy of the matter would be respected; and (4) that the trade secret was improperly used or disclosed by the defendant to the injury of the plaintiff.  *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc*., 581 F. Supp. 2d 654, 662 (D. Del. 2008); *Savor, Inc. v. FMR Corp*., No. 00C-10-249-JRS, 2001 WL 541484, at *8–9 (Del. Super. Ct. Apr. 24, 2001).  The DTSA similarly requires a plaintiff to allege that it (1) owns a trade secret and (2) the trade secret was misappropriated by the defendant, but unlike state trade secret laws like DUTSA, the plaintiff must also allege (3) that the trade secret "is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1); *see also Space Sys./Loral, LLC v. Orbital ATK, Inc*., 306 F. Supp. 3d 845 853 (E.D. Va. 2018) (distilling pleading requirements for DTSA claim); *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 657 (W.D. Va. 2017) (same).

Drawing on the Court's prior reasoning, Teknor disputes whether the alleged "business and marketing strategy" qualifies as a trade secret under federal and Delaware law.  (ECF No. 27 at 10–11; ECF No. 30 at 6–10.)  Teknor does not argue that the Zero G Hose fails DTSA's interstate commerce requirement.  Accordingly, the Court focuses on whether the alleged "business and marketing strategy" qualifies as a trade secret, which Teknor misappropriated.

Federal law and Delaware law define "trade secret" in similar ways.  Delaware law defines a "trade secret" to mean "information" including a "compilation" or "method" that (a) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (b) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  6 Del. C. § 2001(4).  In relevant part, the DTSA defines a "trade secret" as "all forms and types of . . . business . . . information, including . . . plans, compilations,

– 8 –

. . . methods, techniques, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]" 18 U.S.C. § 1839(3). Similar to Delaware law, the DTSA requires that: (1) "the owner" must have taken "reasonable measures to keep such information secret" and (2) "the information must derive independent economic value, actual or potential, from nor being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* §§ (A)–(B).

In assessing whether YRD has satisfied these statutory requirements, the Court is mindful that a "trade secret[] need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secret." *Leucadia, Inc. v. Applied Extrusion Techs.*, 755 F. Supp. 635, 636 (D. Del. 1991); *see also Orthovita, Inc. v. Erbe*, No. Civ. A. 07-2395, 2008 WL 423446, at *9 (E.D. Pa. Feb. 14, 2008); *AutoMed Technologies, Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001). Even so, YRD must provide "sufficient pleading such that the other party is on notice of what it is alleged to have misappropriated." *BlueEarth BioFuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1078 (D. Haw. 2011).

Unlike the Complaint, the FAC translates YRD's alleged strategy from "nebulous allegations" into a concrete confidential marketing "pitch" that combined information about retailer preferences and a specific method for explaining to retailers the failures of the existing hoses in relation to the new compact hose concept and design YRD had developed. (FAC ¶¶ 27, 31, 33.) As the Court has observed already, marketing-related information, such as marketing plans and marketing analysis may constitute a trade secret. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995) (marketing plan); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1117 (Fed. Cir. 1995) (market analysis information); *Art & Cook, Inc. v. Haber*, No. 17-cv-1634-LDH-CLP, 2017 WL 4443549, at *3 (S.D.N.Y. Oct. 3, 2017) (recognizing

– 9 –

"branding/marketing strategies" developed for a brand as "the sort of business information that the DTSA was designed to protect[]").

YRD further alleges facts showing that the pitch was not generally known and how Teknor misappropriated it. In particular, the pitch derived from YRD's "confidential and propriety information . . . gathered in communications with retailers and consumers" and "confidential analysis of consumer preferences." (*Id.* ¶¶ 27–28.) YRD further alleges that retailers were not aware of why the expanding hoses on the market were failing, but YRD disclosed to Teknor the reason for the failures and "explained how th[at] information could be described to retailers in an understandable way that . . . would enable them appreciate the design of the new hose even further." (*Id.* ¶ 31.) All this information was shared with Teknor pursuant to the confidentiality agreement between the parties. (*Id.* ¶¶ 10, 64–65, 75–76.) Yet, "Teknor used precisely this pitch about the attributes of the hose . . . to persuade Lowes, and other retailers, to stock the Zero G Hose[.]" (*Id.* ¶ 33.) These allegations draw Teknor's conduct regarding the pitch into the ambit of the DUTSA and DTSA.

Teknor's argument that the "business and marketing strategy" does not qualify for trade secret protection because it approached YRD first does not alter the Court's conclusion. (ECF No. 27-1 at 11.) Even if both parties were aware that the existing hoses on the market were failing, YRD does not premise the existence of a trade secret on the fact that existing hoses on the market failed, but rather on its particular "pitch" which assembled a particular understanding of the failures and customers' preferences that dovetailed with YRD's compact hose concept and design. At this point, YRD has sufficiently fleshed out how the "strategy" constitutes a trade secret by clarifying that it was a marketing "pitch." Accordingly, the Court denies Teknor's motion to dismiss the DUTSA and DTSA claims to the extent they concern YRD's alleged "business and marketing strategy."

## CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN**

– 10 –

**PART** Teknor's motion to dismiss. (ECF No. 27.):

1. The Court **DENIES** Teknor's request to dismiss the intentional interference claim insofar as it concerns Costco.

2. The Court otherwise **GRANTS** the request to dismiss the intentional interference claim as to retailers with whom YRD's hose merely competes with the Zero G Hose. The claim is **DISMISSED WITH PREJUDICE** to extent it is premised on such conduct.

3. The Court **DENIES** Teknor's request to dismiss the DTSA and DUTSA claims for alleged misappropriation of YRD's "business and marketing strategy," as construed in this Order.

Teknor shall file an amended answer consistent with this Order **no later than September 14, 2018**.

**IT IS SO ORDERED.**

DATED: August 21, 2018

Hon. Cynthia Bashant
United States District Judge